# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Debra Brown, | ) | |
|      Plaintiff | ) | |
| | ) | |
| | ) | |
| Vs. | ) | Civil Action No. 10-11085 |
| | ) | |
| Bank of America N.A. | ) | |
| BAC Home Loans Servicing LP, a | ) | |
| Subsidiary of Bank of America N.A. | ) | |
| Fannie Mae Corporation | ) | |
| Joelyn Oberg | ) | |
| Harmon Law Offices,  PC | ) | |
|      Defendants | ) | |

## FIRST AMENDED COMPLAINT

## I. INTRODUCTION

1.  This is a civil action for injunctive relief, civil penalties, damages and restitution
    brought by the Plaintiff pursuant to M.G.L. c. 93A§ 4, under common law, and
    under M.G.L. c. 244 §14 against Bank of America Corporation, Fannie Mae
    Corporation, BAC Home Loans Servicing, LP, a subsidiary of Bank of America
    Corporation, Joelyn Oberg, and Harmon Law Offices P.C. (collectively the
    "Defendants").

2. The Plaintiff seeks to hold Defendants responsible for the unfair, deceptive acts and practices committed by their employees and agents in fraudulently seizing the Plaintiff's residence with complete disregard for truthfulness and the law of the Commonwealth of Massachusetts.

3. The Plaintiff alleges that the Defendants knowingly violated M.G.L.c. 93A Section 2 by, without limitation, filing false and fraudulent documentation with the Massachusetts Land Court; devising a scheme and artifice to defraud Plaintiff by cajoling her into thinking that a modification effort was in process for over twelve months, sending a invalid and backdated repayment plan, repeatedly issuing letters of correspondence to Plaintiff, federal, state authorities and the United States District Court with false statements about Plaintiff.

4. The Plaintiff alleges that the foreclosure sale was invalid because the Defendants failed to meet the requirements of G.L.C. 244, Section 14, inter alia, requiring transparency and alleges that Defendants, acting in concert, engaged in a conspiracy to disguise the true identities of the parties at interest for purposes of executing the foreclosure transaction without recourse.

5. Plaintiff alleges that the Defendants knowingly violated M.G.L. c. 93A by and without limitation for seeking to hold Plaintiff responsible for a loan that she did not procure and which loan was part of a larger class of Countrywide Loans issued in 2005 that were procured fraudulently by Countrywide Home Loans and commonly referred to as "liars loans." Further they refused to work with Plaintiff to resolve the matter for twelve months, even after the intervention of the Massachusetts Attorney General's office.

6.  Upon information and belief, Plaintiff alleges that Defendants obtained Plaintiff's
    financial information for the sole purpose of debt collection and obtaining more
    money from Plaintiff on the equity loan associated with the underlying mortgage
    loan.  Plaintiff alleges that Defendants continuously represented that a
    modification was in process, when in fact, they had already filed all the
    documents with the Massachusetts Land Court and obtained a judgment that
    represented BAC Home Loans Servicing LP as "holder" and never as a loan
    servicer or trustee.  This was a primary residential mortgage of an amount that
    met the guidelines of Defendant Fannie Mae.  Upon information and belief,
    Plaintiff alleges that Defendant BAC Home Loans Servicing LP ("BAC Home
    Loans"), was never a "holder" of this loan.

7.  The Plaintiff alleges that Defendants BAC Home Loans Servicing, LP and
    Harmon Law Offices PC caused a fraudulent affidavit and complaint to be filed
    with the Massachusetts Land Court on or about May 21, 2009, relying on an
    "Intent to Foreclose Letter" correspondence from a Countrywide Loans that was
    never sent to Plaintiff; a back dated affidavit that represented that the BAC Home.
    Despite Defendant Harmon Law  Offices PC holding themselves out as
    "foreclosure experts" the documents filed with the Land Court were false on their
    face.  At least three different attorneys reviewed these documents from Harmon
    Law Office and following the Complaint filed in this action additional reviews
    should have taken place.

8.  The Plaintiff alleges that Defendants Bank of America Corporation and BAC
    Home Loans, L.P. knowingly libeled her to the Massachusetts Attorney General's

3

Office and the Office of the Comptroller of the Currency in writing by stating that Plaintiff had not provided documents that she did in fact provide to Defendant BAC Home Loans.  In response to numerous demand letters pursuant to Chapter 93A, Defendants argue that this is "mistake" and not fraud.  Plaintiff submits that the pattern of behavior established in this case and highlighted in cases all over the country is that the Defendants employed fraudulent tactics to illegally convert thousands of residential properties from homeowners to the Defendants.  Two responses from Defendants are attached as Exhibit 1 and 2 respectively.

9. The Plaintiff alleges that Defendant Joelyn Oberg engaged in fraudulent conduct and misrepresented the intentions of BAC Home Loans repeatedly in discussions with Plaintiff.  Plaintiff submits documentation as part of Exhibit 3 that Defendant Joelyn Oberg represented in correspondence dated December 31, 2009 and mailed January 6, 2010 that she had a discussion with Plaintiff on December 31, 2009 and that Plaintiff agreed to a repayment plan.  Plaintiff states that she never had a discussion with Defendant on December 31, 2009 and that Defendant Oberg written representations were in fact false.  It is noteworthy that this discussion and false documentation was sent following the issuance of the Massachusetts' Land Courts' Order in the underlying matter.

10. The Plaintiff alleges that Defendant Joelyn Oberg engaged in further fraudulent conduct by issuing the "repayment plan" with false statements simultaneously with the "cancellation of the repayment plan" which also contained false statements that included a representation that Plaintiff failed to meet the terms of the agreement [which Plaintiff never agreed to and never discussed on December

31, 2010].  Plaintiff attached the envelopes for both documents, which were mailed on the same day, several days after the dates noted on the correspondence. Plaintiff immediately forwarded this information to Brian Moynihan, CEO of Bank of America.  Exhibit 3 is a copy of the Chapter 93A demand letter with exhibits sent to Brian Moynihan in August 2010.

11. Plaintiff alleges that Defendant Harmon Law Offices P.C. provides a "foreclosure mill service" for fees from BAC Home Loans and provides additional services.  In response to Plaintiff's demand letter, Harmon Law Offices P.C. ("Harmon") writes:  "Harmon's actions in this matter were undertaken in the representation of its client, BOA, not for its own benefit or gain."  Plaintiff alleges that Harmon Law Offices P.C. was the "kingpin" in this fraudulent scheme of conversion, collecting fees from several sources (including distressed homeowners), representing to each party that they were representing a different party and representing to the Massachusetts court system that the holder of the note was an entity other than the true holder of the note.  Exhibit 4 is evidence that Commonwealth Auction Associates, Inc. was controlled by Mark P. Harmon, principal of Defendant Harmon.  Exhibit 5 is page one of correspondence from Bank of America indicating that Harmon was representing the Plaintiff.  The full letter appears in Exhibit 3.

12. In their response to Plaintiff's demand letter dated November 24, 2010, Harmon acknowledges that they were in receipt of the letters from the U.S. Justice Department, the Office of the Attorney General in New York and the U.S. Securities and Exchange Commission but "that Harmon is aware of no further

action by either the Department of Justice or the Attorney General."  Plaintiff

submits that as of November 24, 2010 Harmon should indeed be aware of the

U.S. Justice Department's investigation into these matters and in fact are clearly

aware of the on-going joint investigation by the fifty state's attorney generals into

this very matter – namely inaccurate foreclosure documentation.  Further Plaintiff

submits that as of October 13, 2010 Defendants have not been allowed to conduct

foreclosures in the Commonwealth of Massachusetts on behalf of BAC Home

Loans pursuant to a directive by the Attorney General of the Commonwealth of

Massachusetts.  Defendant Harmon's response is attached as Exhibit 6.

13. In their response, Defendant Harmon admits that they "commenced the Land

Court action and preparation of statutory notices consistent with a mortgage

foreclosure."  Plaintiff submits that at all times Defendant Harmon represented to

the Court and the public that BAC Home Loans was the "holder of the note."

Defendant Harmon admits that they were in receipt of numerous letters bringing

their attention to the allegations of fraud and they write, "Allowing the mere

allegation of fraud to require an attorney to abandon its representation of a client's

legal interest would result in the collapse of our legal system."  Plaintiff submits

that Defendant Harmon's actions, to file knowingly false documentation with the

Massachusetts Land Court, knowingly move forward with an auction when they

are aware that their client is making substantially different representations and a

complete failure to acknowledge the significance of correspondence from the U.S.

Justice Department, and several state attorney generals – including the Attorney

General for the Commonwealth of Massachusetts results in a significant adverse

effect on our legal system.    Plaintiff submits that Defendant Harmon's correspondence dated November 24, 2010, while in the midst of the multiple investigations into their business practices, further demonstrates the complete disregard for the Massachusetts legal system, the Massachusetts Attorney General's investigation and the Federal Government's investigative authorities.

14. Defendant Fannie Mae responded to Plaintiff's demand letters stating that the "unfair and deceptive acts were committed by BAC Home Loans Servicing, L.P., not Fannie Mae and they state that the Letter fails to describe in any detail the deceptive and fraudulent practices." It is noteworthy that Defendant Fannie Mae has also received the Initial Compliant, Memorandum of Fact and Law in Support of the Complaint and all other filings submitted since May 27, 2010 that included substantial documentation of the deceptive and fraudulent practices.   Whereby making Defendant Fannie Mae's response to the Chapter 93A demand letter less than disingenuous.  On a broader scale, Plaintiff alleges that Defendant Fannie Mae was fully aware that Defendant BAC Home Loans was representing themselves as the "holder of the note" and the Defendant Fannie Mae along with Defendant Harmon were actively engaged in furthering that representation.  The result of this concerted action is an elaborate scheme within the Commonwealth of Massachusetts to hide the identity of the party conducting a foreclosure, in violation of Massachusetts law Chapter 244, §14, eliminating the opportunity for parties to question the standing to foreclose.  Plaintiff alleges that following the "sham auction," by the Harmon affiliate, Defendant Fannie Mae immediately dispatched an agent to her home to tell her to leave the premises.  Plaintiff

submits that Defendant Fannie Mae has continued to have the agent contact Plaintiff and tell her that her home is under surveillance and offer her a few hundred dollars in their "cash for keys" program.   The response from Defendant Fannie Mae is attached as Exhibit 7.

15. The Plaintiff alleges that Defendant Fannie Mae knew or should have known that Defendant Harmon was representing Defendant BAC Home Loans as the "holder of the note" in Massachusetts with complete disregard to the rules of transparency.  Plaintiff further alleges that Defendant Fannie Mae knew or should have known that Defendant BAC Home Loans was not complying with the agencies' own requirements for eligible loan servicers.

16. Fraud is defined generally as an intentional misrepresentation of material existing facts and in a basic definition is defined as deceit, trickery, imposter and deception.  Using a thesaurus, one can find that the antidote to fraud is fairness, honesty, integrity, sincerity and truth.

## II. **JURISDICTION AND VENUE**

17. This Court accepted this matter following a filing of a defective Notice of Removal filed by Defendants Bank of America and Fannie Mae Corporation. Plaintiff has requested remand twice and requested that this Court allow an appeal of the Court's decision not to remand, all of which requests were denied.  Across the country Bank of America moves cases alleging fraud to the federal courts and then files a Motion to Dismiss.  Plaintiff submits that this "pattern" is suspect.

18. Plaintiff is a resident of the Commonwealth of Massachusetts; Defendant Harmon Law Office is a resident of Massachusetts; Fannie Mae Corporation is a U.S. Government sponsored entity.  Upon information and belief, Defendants Bank of America Corporation, BAC Home Loans and Joelyn Oberg are not residents of the Commonwealth of Massachusetts.  Bank of America and BAC Home Loans Servicing LP conduct an extensive amount of business in the Commonwealth and Ms. Oberg held herself out as an "expert" in foreclosure matters and as a senior staff member for BAC Home Loans.

### III.   THE PARTIES

19. The Plaintiff is the sole owner of the property at issue in this dispute brings this action pursuant to M.G.L. c. 93A Section 4 and M.G.L. c. 244 Section 14. Plaintiff has served as a practicing attorney in the Commonwealth of Massachusetts for over twenty years with a specialty of practice in the investigation of fraud conducted within financial institutions.  Plaintiff is a single mother of two school-aged children and has resided in this residence since July 1991.  Plaintiff paid her mortgage promptly for over seventeen years and made many improvements to the residence.  Plaintiff has been an active volunteer in her community for nearly twenty years, served as youth sports coach, and involved with the local schools.   Defendants' fraudulent actions have resulted in rendering Plaintiff and her children homeless.  Judge Kaplan of the Massachusetts Superior Court issued the Preliminary Injunction in this case on June 8, 2010 enjoining the Defendants from evicting the family, but with the removal to federal court, the

Defendants immediately filed a Motion to Dismiss.  To date no answer or responsive pleading has been filed to the original complaint.  Plaintiff has never filed a lawsuit on her own behalf.  Rather she has served as CEO, Chief Legal Officer, software developer, teacher, lecturer, arbitrator and principal of her firm since September 2000.

20. Defendant Bank of America has been charged and made numerous settlements with the U.S. Securities and Exchange Commission for violations of the federal securities laws, including laws that require accurate disclosure.  Through their actions, Defendant Bank of America has established a repeated disregard for federal and state laws and continuously provides statements that lack truthfulness. Bank of America Corporation is currently the Defendant in an action taken by the Attorney General of the State of New York and the Special Inspector General of the TARP for fraud in connection with disclosures.  Several weeks ago a federal court judge ruled that Bank of America violated federal law when it "brazenly seized $500 million of Lehman's deposits, taking advantage of Lehman's weakened condition in the summer of 2008.  On or about October 5, 2010 Massachusetts Attorney General Martha Coakley called on Bank of America to suspend all foreclosures in the Commonwealth of Massachusetts due to her concern that [there is evidence] that the lender gave scant attention to compliance with state law governing foreclosures.[1]  Foreclosures by Bank of America in Massachusetts have resumed and are anticipated to proceed at record and unprecedented levels.  As noted, Plaintiff sent multiple Chapter 93A letters to these Defendants for purposes of settling this matter without any substantive

---

[1] Press Release from the Office of the Attorney General

response.  Plaintiff alleges that the pattern of behavior exhibited by these Defendants throughout many lines of their businesses is one of arrogance, deceit, trickery and a reckless disregard for federal and state law.

21. Defendant BAC Home Loans is the subsidiary of Bank of America charged with "servicing" mortgage loans.  Defendant BAC Home Loans' senior management has testified numerous times over the last several months before Congress and special committees at all times telling the elected officials that they are working with homeowners.     It is noteworthy that on March 24, 2010 the Attorney General filed an enforcement complaint pursuant to Massachusetts Consumer Protection Act G.L.C. 93A§4 and §12 requiring Countrywide [predecessor company to BAC Home Loans] to pay civil penalties, restitution and other compensation for damages arising from their unfair origination of residential mortgage loans in Massachusetts in 2005 and 2006.  BAC Home Loans Servicing submitted to a settlement in that action, but it is not known whether the company paid the fine or implemented the programs required by the settlement.  Plaintiff sent a Chapter 93A letter to this entity and has not been afforded any discussion as to settlement.

22. Defendant Harmon Law Offices P.C is a "foreclosure mill" law firm and is currently the subject of investigation by the Massachusetts Attorney General's Office.  The principal of Harmon Law Office served on the Board of Directors for an affiliated entity of the David Stern Law Practice, the largest foreclosure mill in Florida and currently the subject of state and federal investigations as to their business practices.  The principal of Defendant Harmon also serves as President,

11

Secretary and Director of Commonwealth Auction Associates, Inc., which maintains the same office address as Defendant Harmon and was the firm that conducted the "sham auction" in this underlying matter.   Plaintiff sent a Chapter 93A letter to this Defendant prior to including them in this proceeding.   The Defendant refused to provide any attempt to resolve this matter but did provide a response to that letter.   The principal and some attorneys also serve as officers of the Mortgage Electronic Registration Service, Inc.  .

23. Defendant Fannie Mae Corporation is the subject of many federal and state inquiries as to the manner of oversight over loan servicing companies.   In addition Defendant Fannie Mae Corporation has stated publicly that they are requesting reimbursement from loan servicers as to certain mortgages, of which the underlying matter may be subject.   Defendant Fannie Mae has been on notice about the deceptive acts and practices of the co-defendant Bank of America Corporation in connection with this matter and thousands of other properties that were leveraged with part of the Countrywide loan portfolio.   Plaintiff has submitted multiple Chapter 93A demand letters to this Defendant and they have refused any discussions of settlement.   In fact Defendant Fannie Mae Corporation's general counsel is the former general counsel of Defendant Bank of America who was involved with, opined on and approved disclosure in connection with the acquisition of the Countrywide business.   Plaintiff submits that this fact makes it difficult for Defendant Fannie Mae to claim ignorance of their fellow defendants' actions and deceptive practices.

24. Defendant Joelyn Oberg held herself out as a senior representative from BAC Home Loans and repeatedly told the Plaintiff that a modification was being considered and that she was ineligible to sell her home while it was in foreclosure. Defendant Joelyn Oberg sent the documentation with fraudulent information as to a "repayment plan" at the same time that she sent a cancellation of the repayment plan, days after a compliance date in the letter.  Upon information and belief, Plaintiff submits that this document was sent for purposes of misleading federal and state regulators that they were making an effort to assist homeowners – when in fact it was an "attempt to collect a debt" with no assurance as to home retention.  Plaintiff sent Defendant Oberg a Chapter 93A demand letter.  No response was provided.

## IV. FACTS

25. Plaintiff purchased the home as a joint tenant on July 1, 1991 and had a traditional thirty-year mortgage.

26. On or about September 2005, Plaintiff's former husband initiated a loan application process with Countrywide Home Loans without her participation for a refinance of the existing mortgage and home equity line of credit.

27. Plaintiff was asked to sign the documents at the closing but was not considered the primary borrower at anytime on the note and all interest paid was noticed to former husband's tax identification number.  In February 2010 Plaintiff requested that the statement of amounts paid be corrected with her tax identification number, which request was refused by Defendant BAC Home Loans.

28. In August 2008 a divorce decree was entered by the Court providing Plaintiff with a Quit Claim Deed to the property while husband received all other assets. Plaintiff immediately notified Countrywide Home Loans and provided them with a copy of the decree in good faith.  The Countrywide representative acknowledged the information and orally informed Plaintiff that she would have a one year hardship forbearance on the mortgage and at the end of the one year Plaintiff would have an opportunity to qualify independently on the mortgage or seek other financing.

29. In May 2009 Bank of America Corporation assumed the business of Countrywide Home Loans and immediately provided the Plaintiff with a Notice to Foreclose and asked Plaintiff to walk away from the home.  The representative told Plaintiff that she could not sell the home in foreclosure.

30. Shortly thereafter a representative of Bank of America Corporation and a Defendant to this action, Ms. Joelyn Oberg began working with the Plaintiff telling her that she was working on a modification and/or repayment plan.  She obtained extensive financial information from Plaintiff over a two-month period and never provided a repayment plan, modification or written denial of eligibility.

31. Plaintiff repeatedly requested a modification or repayment plan in writing from the Defendant Oberg and did not receive any such document, despite continuous representations by the Defendant that a review was in process.

32. On December 20, 2009 Plaintiff received a notice of auction date of the property for January 20, 2010 from Defendant Harmon and listing Defendant BAC Home

Loans as the holder of the note.  At that time Plaintiff had never received written notice of a denial of modification or a repayment plan.

33. On December 31, 2009 Ms. Joelyn Oberg left two messages on Plaintiff's answering service that they thought that they had a plan that would work out the Plaintiff's mortgage.  Plaintiff was not in the office that day and was unable to return the call until January 4, 2010 when Ms. Oberg was back in the office.

34. When the conversation was held on January 4, 2010 Ms. Oberg described a repayment plan that would continue to make Plaintiff responsible for all legal fees and interest charges over Plaintiff's objections and would require Plaintiff to stay "in foreclosure" for six months and then receive a review on whether she would be allowed out of foreclosure.  Plaintiff provided a written counter-offer to Defendant that would eliminate the additional charges and allow Plaintiff to be taken out of foreclosure upon payment of the up-front amount.  Defendant rejected that offer.

35. On or about January 10, 2010 Plaintiff received two letters from Defendant BAC Home Loans one dated December 31, 2009 that stated "per our discussion you have agreed to following repayment plan."  The first payment was required by January 4, 2010.  The postage on the front of the envelope was noted as January 6, 2010 – after the compliance date for the repayment plan.  The second letter was dated January 4, 2010 stating that since there was a failure to receive the payment, the payment plan was cancelled.  Plaintiff immediately forwarded the documents with an accompanying letter explaining the nature of the fraudulent

correspondence to the newly appointed Chief Executive Officer of Bank of America, Brian Moynihan, by federal express on or about January 11, 2010.

36. Defendant BAC Home Loans continued to request documents, including a copy of the Quit Claim Deed, which was sent on or about January 11, 2010.

37. As the Auction date of January 20, 2010 approached, Plaintiff reached out to the Massachusetts Attorney General's office and Massachusetts Department of Banks to complain as to the failure to obtain modification and/or a valid repayment plan despite the continuous representations of the Defendant that a committee was working on a plan.

38. The Massachusetts Attorney General's Office was able to arrange to have the sale date cancelled so that a proper modification review could be conducted.

39. Plaintiff submitted a formal complaint to the Office of the Comptroller of the Currency  ("OCC") with the falsified reinstatement documents (which was copied to the Defendant Bank of America) and submitted a complaint to the Inspector for the SIGTARP on or about January 21, 2010.  Plaintiff has continued to send documents to the OCC and to date no decision has been received.

40. Plaintiff continued to request that the Defendants conduct a meaningful modification review despite the lack of good faith on the part of the Defendants over the previous eight months.  Even after the receipt of the complaint filed with the OCC, the Defendant continued to refuse to provide any written evidence of a modification review.  However as a result of Plaintiff's correspondence with the CEO of Bank of America, all future correspondence came on letterhead from the

Office of the CEO of Bank of America, rather than the BAC Home Loans Servicing letterhead.

41. Defendant Bank of America Corporation submitted a letter to the Massachusetts Attorney General's office from the Office of the Chief Executive Officer of Bank of America on February 25, 2010 falsely stating that Plaintiff had failed to provide them with a quitclaim deed. In later correspondence to the Plaintiff from the Office of the Chief Executive Officer it was noted that the quitclaim deed was received on January 30, 2010.

42. Plaintiff submitted a HAMP Program Application through a mediator with the Massachusetts' Attorney General's Office, which was considered, accepted by the Defendant prior to the auction date. The Defendant failed to respond to calls from the Massachusetts Attorney General's office to postpone or cancel the sale until the modification review had taken place.

43. Plaintiff objected to the sale of the property pending the outcome of the Office of the Comptroller of the Currency's decision on the complaint. Defendant Bank of America provided a letter to the Comptroller of the Currency stating that Plaintiff failed to provide them with documents, which in fact Plaintiff had provided at numerous times.

44. Defendants held the sham auction of the property by Commonwealth Auction Associates LLC, affiliate of Defendant Harmon on May 10, 2010 over the objection of the Plaintiff. Defendant Harmon then sent correspondence identifying Defendant Fannie Mae as the buyer of the home. Plaintiff raised the issue repeatedly in writing with the Defendants that they could not sell the home

17

without identifying the holder of the mortgage.  Upon information and belief, Plaintiff subsequently learned that Defendant was listed as the registered holder of the mortgage in the MERS system prior to the auction, but no such information was provided to Plaintiff from the Defendants despite her repeated written requests.  The land court documents all state that BAC Home Loans was the holder.

45. Following the auction the Defendants first represented to the Massachusetts Attorney General's office that they would rescind the sale.  Several days later they refused to rescind the sale but continued to ask for documents and money to consider a modification.

46. Defendants stated that they would not file the foreclosure deed at the Registry while they conducted the review.  Each day Defendant had numerous document requests.  On May 27, 2010 Plaintiff filed the Complaint in Massachusetts Superior Court and immediately received a temporary restraining order against Defendants Bank of America Corporation and Fannie Mae Corporation.  On June 8, 2010 a hearing was held on the Request for Preliminary Injunction.  Defendant Harmon sent an attorney to the hearing who submitted a notice of appearance.  A few days later, Plaintiff received a call from another lawyer at another law firm stating that he represented both Defendants.

47. Defendants have since changed law firms multiple times; filed a defective notice of removal to this federal court which they were allowed leave to correct; failed to respond in any meaningful way to the Chapter 93A letters and have filed numerous documents with the Court restating information known to be false.

## FIRST CAUSE OF ACTION
### (Unfair or Deceptive Acts or Practices in Violation of M.G.L. c. 93A Section 2)

48. The Plaintiff repeats and realleges paragraphs 1 through 47 of this Complaint.

49. The Defendants engaged in unfair or deceptive acts by continuing to falsely represent to Plaintiff that they would allow her to reinstate the loan and move out of foreclosure causing significant financial and economic harm to Plaintiff and her minor children.  Had Plaintiff not relied on Defendants' misrepresentations she could have sold the property and retained the equity.

50. The Defendants, in concert, engaged in deliberate unfair and deceptive acts to conceal the identity (or identities) of the holder of the note and the entity that had standing to bring the foreclosure in violation of Massachusetts General Law; to keep Plaintiff in the home until the foreclosure sale; to keep Plaintiff paying on the equity loan to Defendants; and to allow Defendants to take the property through the foreclosure process than through a private sale.  Plaintiff alleges that since there was equity value in the home, Defendants sought to convert the property for their gain.

51. The Defendants have continued to engage in the behavior elaborated on in the Complaint including providing false statements to the Courts with respect to the underlying facts in this matter.

52. The Defendants misrepresentations were material.

53. The Defendants knew or should have known that they were committing actions that were unfair or deceptive in violation of M.G.L. c. 93A Section 2.

54. Defendant Harmon served as the lynchpin of the scheme, collecting fees from the other Defendants, repeatedly requesting fees from the Plaintiff for their services and serving as the "auctioneer" who allegedly transferred ownership.  Defendant Harmon quotes the following "The misconduct must have an entrepreneurial, commercial or business purpose, that it serve the actor's financial benefit or gain." McGonagle v. Home Depot, U.S.A. Inc., 75 Mass. App. Ct. 593, 915 N.E.2d 1083, 1088 (2009).  Plaintiff submits that Defendant Harmon's foreclosure mill operation with alleged signing authority under the MERS system (allowing them to assign mortgages at will) and related entities are extraordinarily entrepreneurial, commercial and serve a business purpose to benefit Harmon to the detriment of thousands of Massachusetts homeowners.

## SECOND CAUSE OF ACTION
### (Defamation and Libel)

55. The Plaintiff repeats and realleges paragraphs 1 through 54 of this Complaint.

56. The Defendants Bank of America Corporation and BAC Home Loans defamed and libeled Plaintiff in numerous correspondence with the Massachusetts Attorney General's Office and the Office of the Comptroller of the Currency in order to represent that they were "helping" Plaintiff in her home retention effort while in fact, they had filed false documents with the Massachusetts Land Court.

57. The Defendants' Bank of America Corporation and BAC Home Loans defamation and libel caused substantial economic harm to Plaintiff.

## THIRD CAUSE OF ACTION
### (Negligence)

58. The Plaintiff repeats and realleges paragraphs 1 through 57 of this Complaint.

59. The Defendants were negligent in their actions and deeds in deliberately selling the property when they knew in fact that a complaint was pending with the Office of the Comptroller of the Currency and that the Massachusetts Attorney General's Office had submitted paperwork on behalf of Plaintiff to have the required review conducted by all loan servicers; they knew that a formal request for modification had been filed and they had received copies of the false reinstatement documentation.

60. The Defendants were negligent in their actions by deliberately disregarding corporate directives from Defendant Fannie Mae that once a HAMP application was submitted (deemed received on May 6, 2010), loan servicers participating in the HAMP Program are not allowed to proceed with a foreclosure sale until they have evaluated the homeowner for modification under HAMP, and, if eligible, offer you a trial modification.[2]  The Defendants were negligent in their failure to supervise personnel and foreclosure attorneys and to ensure that materials were compliant with State laws.

61. The Defendants' negligence caused substantial economic harm to Plaintiff.

---

[2] www.makinghomeaffordable.gov/borrower-faqs.html#55

## FOURTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

62. The Plaintiff repeats and realleges paragraphs 1 through 61 of this Complaint.

63. The Defendants deliberately contributed to the emotional distress of Plaintiff, calling her home at all hours of the day, giving her notice of an auction date on December 20, 2009 (four days before Christmas) and calling her on New Year's Eve to say they had a modification, that was in fact a false representation. Plaintiff submits that these calls and letters during the holidays were done deliberately to upset Plaintiff and cause her to abandon the property.

64. The Defendants persisted in falsely representing that a modification would come, even after the auction date of the house.  Defendants Bank of America and BAC Home Loans continue to make public statements that they are reviewing practices and documents, yet refuse to offer any consideration to Plaintiff despite the numerous written demand letters.

65. The Defendant's negligent infliction of emotional distress caused substantial economic harm to Plaintiff and caused her significant business interruption.

**FIFTH CAUSE OF ACTION**
**(Illegal Retaliatory Action)**

66. The Plaintiff repeats and realleges paragraphs 1 through 65 of this Complaint.

67. Plaintiff served as Independent Monitor for eighteen months as to certain business units of Bank of America Corporation in accordance with an Order of Discontinuance issued by the Attorney General of the State of New York.

68. Plaintiff issued a report that required Bank of America to implement certain recommendations for enhancements of their internal compliance program.

69. The Defendant's actions in this case cause Plaintiff to believe that this action is an illegal retaliatory action for her prior service as their "independent monitor."

**SIXTH CAUSE OF ACTION**
**(Violation of G.L.C. 244, Section 14)**

70. The Plaintiff repeats and realleges paragraphs 1 through 69 of this complaint.

71. Defendants knew or should have known that Massachusetts G.L.C. 244 requires any foreclosing party to operate with complete transparency.  The Massachusetts Courts have taken this position most seriously due to what is at stake:  the complete extinguishments of a person's rights in his or her property, the home where she and her minor children reside.

23

72. Defendants submitted documents to the Massachusetts Land Court and provided notice that they were the holder of the loan when in fact they were the loan servicers.   G.L.C. 244 Section 14 requires strict compliance and a failure to do so means that the foreclosure is invalid.[3]   Plaintiff now believes that Defendants' actions were in concert to defraud the individuals, the public (through public notices) and the Massachusetts Courts as to the identity of the holders of a mortgage, including the fact that none of the parties may have had standing to bring a foreclosure under the laws of Commonwealth of Massachusetts.

### SEVENTH CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

73. The Plaintiff repeats and realleges paragraphs 1 through 72 of this Complaint.

74. Defendants are obligated by contract and common law to act in good faith and to deal fairly with each borrower.

75. The purpose of the covenant is to guarantee that parties remain faithful to the intended and agreed expectations of the parties in their performance.  Uno Resturants, Inc. v. Boston Kenmore Realty Corp., 441 Mass 376, 385 (2004)

76. Defendants routinely and regularly breached this duty by:

      a.  Failing to perform loan servicing functions consistent with its responsibilities to Plaintiffs;

---

[3] See Memorandum and Order on Plaintiffs Motions to Vacate Judgment, U.S. Bank National Association v. Antonio Ibanez 08 MISC 384 283 (KCL)

b.  Failing to properly supervise its agents and employees including, without limitation, its loss mitigation and collection personnel and its foreclosure attorneys;

c.  Misrepresenting the holder of the mortgage and engaging in a pattern of deceit to conceal the holder of the mortgage

d.  Filing a false affidavit with the Massachusetts Land Court.

## EIGTH CAUSE OF ACTION
### (Wrongful Foreclosure)

77. The Plaintiff repeats and realleges paragraphs 1 through 76 of this Complaint.

78. The Defendants filed false documents with the Massachusetts Land Court in May 2009 representing that Defendant BAC Home Loans Servicing LP had standing to obtain a determination pursuant to the Servicemember's Act.  An affidavit dated March, 2009 represented that BAC Home Loans Servicing LP was the "holder" and a subsequent alleged assignment signed by a Harmon attorney and recorded on the Southern Essex Country Registry of Deeds on or about June 2, 2009 assigned the mortgage from MERS to BAC Home Loans Servicing LP. (documents attached as Exhibit 8).

79.  The Defendants wrongful foreclosure has caused substantial economic harm to Plaintiff and caused her significant business interruption.

WHEREFORE, the Plaintiff requests that this Court, after a trial by jury:

1. Order the Defendant to refrain from engaging in any unfair or deceptive acts or practices in connection with any real estate transactions;

2. Enter judgment in Plaintiff's favor and against Defendant for damages, restitution and other equitable relief pursuant to M.G.L. c. 93A Section 4;

3. Grant such other and further relief as this Court deems just and proper.


Respectfully Submitted,


Debra Brown
BBO# 553018
P.O. Box 5265
Beverly, MA 01915
(978) 921-6688

Date:  December 28, 2010

CERTIFICATE OF SERVICE

I, Debra Brown, hereby certify that pursuant to Local Rule 7.1(A)(2), I have attempted to confer with Defendants requesting permission to file this amended Compliant in a good faith attempt to resolve or narrow the issues presented, but have been unable to do so.

Further, I, Debra M. Brown, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on December 28, 2010.

/s/ Debra Brown_____
Debra Brown

December 28, 2010

# EXHIBIT 1

# GOODWIN | PROCTER

Chad W. Higgins
617.570.1229
CHiggins@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

September 10, 2010

**VIA CERTIFIED U.S. MAIL**

Debra M. Brown, Esq.
P.O. Box 5265
Beverly, MA 01915
T: (978) 921-6688

Re:     **Demand for Relief under Mass. Gen. Laws Ch. 93A**

Dear Ms. Brown:

I write on behalf of BAC Home Loans Servicing, LP ("BAC"), in response to your August 13, 2010 letter purportedly sent pursuant to Mass. Gen. Laws Ch. 93A, § 9 (the "Demand Letter"). As the statute requires, this letter is being sent within thirty days of the date you allegedly sent your Demand Letters to BAC.  This letter is sent solely for settlement purposes pursuant to Chapter 93A, § 9(3).

Your Demand Letter fails to describe the allegations supporting your claim that BAC has committed "unfair and deceptive trade practices in connection with the Commonwealth of Massachusetts."  While the alleged "deceptive and fraudulent practices" are supposedly "outlined in numerous correspondence" between you and BAC, your letter fails to describe the contents of those correspondence or even enclose those correspondence with your letter. Therefore, your letter fails to comply with Mass. Gen. L. ch. 93A, § 9(3), which requires a demand letter to "reasonably describ[e] the unfair or deceptive act or practice relied upon and the injury suffered."

Because your letter fails to comply with Mass. Gen. L. ch. 93A, § 9(3), BAC cannot meaningfully address your allegations or provide a written offer of settlement.  Any response to your letter at this point would be guesswork, something which BAC is not required to do by law.

GOODWIN PROCTER

Ms. Debra M. Brown, Esq.
September 10, 2010
Page 2

Sincerely,

Chad W. Higgins, Esq.

**EXHIBIT 2**

# GOODWIN | PROCTER

| | |
|---|---|
| Chad W. Higgins | Goodwin Procter LLP |
| 617.570.1229 | Counselors at Law |
| CHiggins@ | Exchange Place |
| goodwinprocter.com | Boston, MA 02109 |
| | T: 617.570.1000 |
| | F: 617.523.1231 |

September 10, 2010

**VIA CERTIFIED U.S. MAIL**

Debra M. Brown, Esq.
P.O. Box 5265
Beverly, MA 01915
T: (978) 921-6688

Re:     **Demand for Relief under Mass. Gen. Laws Ch. 93A**

Dear Ms. Brown:

I write on behalf of Bank of America, NA, and Mr. Brian T. Moynihan (collectively "BoA") in response to your August 14, 2010 letter purportedly sent pursuant to Mass. Gen. Laws Ch. 93A, § 9 (the "Demand Letter"). As the statute requires, this letter is being sent within thirty days of the date you allegedly sent your Demand Letter to BoA. This letter is sent solely for settlement purposes pursuant to Chapter 93A, § 9(3).

As you no doubt are aware, you currently have brought an action against Bank of America Corporation and Federal National Mortgage Association arising from the allegedly improper foreclosure on the property at 99 Homestead Circle, South Hamilton, Massachusetts. This action is currently pending in the District of Massachusetts, 1:10-cv-11085(GAO).

In that action you also allegedly asserted a claim pursuant to Mass. Gen. L. 93A against Bank of America Corporation and sent Bank of America Corporation an initial demand letter purportedly pursuant to Mass. Gen. Laws Ch. 93A, § 9. Bank of America Corporation responded to that demand letter on June 28, 2010, denying any liability but offering to resolve the matter to avoid needless litigation. You did not respond to that offer. A copy of that letter is enclosed.

Your current Demand Letter does not appear to assert any allegations that differ from your initial demand letter sent to Bank of America Corporation or the allegations made in the Complaint against Bank of America Corporation in the pending action.

Most important, neither your current Demand Letter nor the initial one contest that you agreed to make payments under the mortgage loan agreement but that you failed to honor that agreement.

GOODWIN PROCTER

Ms. Debra M. Brown, Esq.
September 10, 2010
Page 2

Further, neither letter contests that Bank of America Corporation was injured as a result of your actions.

To the extent you now seem to emphasize the allegation that BoA or Bank of America Corporation incorrectly stated it did not receive a copy of a quit claim deed you allegedly sent, this allegation does not constitute unfair or deceptive business practices as a matter of law, because, at most, you have alleged a mistake. *E.g., American Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221, 256 (D. Mass. 1995) ("Ordinary negligence alone, which does not 'reek of callousness' or 'meretriciousness,' is not the sort of "truly inequitable marketplace behavior" which Chapter 93A was intended to punish.") (quoting *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 624 (1994)); *see Damon v. Sun Co.*, 87 F.3d 1467, 1484 n.10 (stating that negligence can only equal liability where it is accompanied by "rascality").

Furthermore, it is not clear how the allegation regarding the quit claim deed damaged you. You do not contest in any of your demand letters that Bank of America Corporation attempted to work with you and with the Attorney General's Office over a number of months to avoid foreclosure. Even after the foreclosure sale, Bank of America Corporation has attempted to work with you. Most recently, after you pursued litigation, Bank of America Corporation offered in its response to your initial demand letter to explore rescission of the foreclosure sale and determine whether you are eligible for a modification of your mortgage loan agreement. You did not accept that offer. In light of the many attempts by Bank of America Corporation to resolve this amicably, it is unclear how allegations regarding the quit claim deed caused you any damage.

Moreover, the allegation regarding the quit claim deed is simply not a reason you should be excused from honoring your mortgage loan agreement. If you cannot or will not honor your agreement, foreclosure is the proper legal remedy. Thus, your demand of approximately $1,000,000 in damages and discharge of the mortgage is, to put it charitably, unsupportable.

For these reasons, it is the position of BoA that you have no valid 93A claim. Nevertheless, while BoA denies any liability whatsoever, BoA is prepared, in an attempt to resolve this matter, to reiterate the prior offer of Bank of America Corporation, namely to seek to have the foreclosure sale rescinded, reevaluate within 60 days whether you are eligible for a modification of the mortgage, and provide you with a one-time payment of $1,500.00 in full settlement of all of your claims against any and all Bank of America-related entities or personnel, including Mr. Moynihan. This offer to reevaluate your modification eligibility within 60 days is contingent on your full, timely cooperation, including providing BoA with any and all information requested by any reasonable deadlines set by BoA.

You may accept this written tender of settlement within ten (10) days, by executing the accompanying Acknowledgement and Acceptance and returning this letter to me in the enclosed, self-addressed, stamped envelope. Upon receipt of the written Acknowledgement and

GOODWIN│PROCTER

Ms. Debra M. Brown, Esq.
September 10, 2010
Page 3

Acceptance, the terms of the arrangement will need to be formally documented in order to include a general release of my client and other potentially responsible parties.

If you fail to accept this written tender of settlement in writing, and if a court later determines that this written offer of settlement was timely and reasonable in relation to the injury actually suffered by you, then your recovery (if any) shall be limited to the relief tendered herein. Moreover, pursuant to M.G.L. c. 93A, § 9(4), if you reject this offer of settlement and a court later deems it to have been reasonable, the court is required to deny any recovery of attorney's fees and costs that are incurred after the rejection of this written offer of settlement.

Please do not hesitate to contact us if you would like to discuss any of these issues.

Sincerely,

Chad W. Higgins, Esq.

ACKNOWLEDGEMENT AND ACCEPTANCE OF DEBRA M. BROWN:

The undersigned hereby accepts the settlement terms contained in this letter of September 10, 2010, in full satisfaction of all claims, rights and demands.

_____

Debra M. Brown

Date: _____  _____, 2010

# EXHIBIT 3

# Brown & Associates LLC

*Legal, Compliance & Regulatory Services*

P.O. Box 5265
Beverly Farms, MA 01915
Telephone  (978) 921-6688

August 14, 2010

Certified Mail and
And US MAIL
Brian T. Moynihan
Chief Compliance Officer
Bank of America N.A.
100 North Tryon Street
Charlotte, NC  28202

**RE:  DEMAND LETTER – Mortgage and Equity Loan on 99 Homestead Circle, South Hamilton, Massachusetts, 01982**

Dear Mr. Moynihan:

Pursuant to Massachusetts Law Chapter 93A, Section 9 businesses doing business in the Commonwealth of Massachusetts are prohibited from doing unfair or deceptive acts in connection with residents of the Commonwealth of Massachusetts.  Since January 2010 through the present, representatives of the office of the CEO of Bank of America (your representatives) engaged in a series of communications written and verbal in connection with the mortgage instruments held on the undersigned's residence that constituted deceptive and fraudulent practices to the undersigned and the Attorney General's Office for the Commonwealth of Massachusetts.

On January 13, 2010 a letter was sent directly to you at the Boston office informing you and attaching a series of documents with postmarks evidencing a fraudulent transaction. (Exhibit 1).  A correspondence from a Mark Weir of the Office of the CEO & President of Bank of America was sent directly to Ms. Krista Roche of the Office of Attorney General Martha Coakley on February 25, 2010 (and forwarded to the undersigned) stating inter alia, that "Ms. Brown has not provided a quit claim deed and has not been inclined to commit to any amount to start a repayment plan." (Exhibit 2).

In a correspondence dated April 6, 2010 and postmarked April 14, 2010, a representative Tony Hummel from the Office of the CEO and President wrote in the letter "Please fax the information to the attention of the undersigned at 1.704.683.7034 within the next seven calendar days."  The postmark on the envelope [April 14, 2010] is one day after the seven-day requirement in the letter and the letter was actually received several days after the postmarked date. (Exhibit 3)

Chapter 93A Letter to Brian T. Moynihan
Page 2

In a correspondence dated May 7, 2010 and postmarked May 11, 2010, a representative Tatiana P. Lozada from the Office of the CEO and President wrote, inter alia, "Our records indicate that Bank of America did not receive the Quit Claim Deed until January 31, 2010." (Exhibit 4)   This statement clearly represents that the letter to the Attorney General's Office of February 25, 2010 contained a false statement, written to deliberately state to the Massachusetts Attorney General's office that the undersigned had not complied with the Bank's request for information.  In fact, the undersigned did provide information over and over again in response to the Bank's requests.

In a correspondence dated **July 9, 2010** which was faxed to the Massachusetts' Attorney General's office, a representative Cathy Talarico from the Office of the CEO and President wrote, inter alia, "Bank of America's Office of the CEO and President acknowledges receipt of our mutual customer Ms. Debra Brown's correspondence dated April 13, 2010 which was forwarded to us." And "You are now requesting that the foreclosure sale date be postponed and the file reopened for workout assistance." (Exhibit 5) This document represents that information in response to numerous requests was submitted and received by the Bank of America, Office of the CEO and President on April 13, 2010.  This contradicts the earlier correspondence sent directly to Ms. Brown on May 7, 2010 which represents that "Upon receipt of the above-mentioned information, Bank of America will re-open the file for further review and look at every available loan modification option…"

You as Chief Executive Officer have a duty to maintain standards of ethics and fiduciary obligations with communications with customers and State Officials.  In an undated statement signed by you, your letter specifically states "Trust is at the heart of what we do.  Our customers and clients want to know they are doing business with a financial services company that they can trust." This letter goes on to state that "the Code of Ethics course that we review each year contains new information this year about making good decisions, interactions with government employees…" Your letter concludes with the following statement "As we work together to achieve our goals, it is equally important that we commit to one another that we will always do business and grow the right way – with the honesty, integrity and fair dealing that our Code of Ethics and our Core Values require." (Exhibit 6.)

Mr. Moynihan, you as an Chief Executive Officer of Bank of America N.A. engaged in a repeated series of deceptive acts with the undersigned and the Attorney General's Office for the Commonwealth of Massachusetts designed to represent that your firm has acted in good faith, when in fact, there was no good faith.  As a result of your and your staff's failure to act in good faith in your dealings with the undersigned, the undersigned has incurred significant harm in loss of wages, business interruption, loss of assets and a compromised residence. She is unable to work with BAC Home Loans Servicing, LP in any capacity in the future.

Chapter 93A Letter to Brian T. Moynihan
Page 3

This demand for relief is for you to rescind the sale and discharge said mortgages in the approximate amount of $320,000.00 from the undersigned and pay additional damages in the amount of $640,000.00.  If you are unable to rescind the sale and discharge said mortgages the demand for relief is $400,000.00 (approximate value of the undersigned's residence) with additional damages.

Pursuant to Chapter 93A you have thirty (30) days to respond to this letter.

Sincerely,

Debra Brown

Attachments:  Exhibits 1 through 6

# Brown & Associates LLC

*Legal, Compliance & Regulatory Services*

P.O. Box 5265
Beverly Farms, MA 01915
Telephone (978) 921-6688

*Exhibit 1*

January 13, 2010

Brian T. Moynihan
Chief Executive Officer
Bank of America
100 Federal Street
Boston, MA 02110

RE: BAC Home Loans

Dear Mr. Moynihan:

Over this last week, I was compelled to file a complaint against BAC Home Loans with the Office of the Comptroller of the Currency, Massachusetts Attorney General's Office and the Massachusetts Department of Banks. This week I was presented with documentary evidence (copies attached) of impropriety that is occurring with this company. It is my understanding that BAC Home Loans may be the former Countrywide Group and not fully integrated into the Bank of America corporate culture.

From 2005-2006 I served as Independent Compliance Monitor for Bank of America in connection with the New York Attorney General's Order in connection with the Columbia Fund Group. In my experience in that role, Bank of America had a strong culture of compliance (see copy of the reports). This type of fraudulent activity would not have been tolerated. Although this matter involved my personal file, it is a business practice that is likely part of a pattern of behavior for this corporate group of BAC Home Loans. Throughout the process, I was told that the "lawyers" had reviewed the file.

Much analysis has been made about the role of leadership in corporate America. A case study is often that of the tainted Tylenol that had to be removed from the shelves. It is imperative in your new role as chief executive officer to establish a track record of integrity, character and strong leadership. I hope that you could have your team investigate this matter and take proper action to ensure that this is not happening to other borrowers.

Regards,

Debra M. Brown



| Invoice Number | Invoice Date | Account Number | Page |
|---|---|---|---|
| 9-469-21076 | Jan 18, 2010 | 2479-5818-5 | 3 of 3 |

## FedEx Express Shipment Detail By Payor Type (Original)

Dropped off: Jan 13, 2010                Cust. Ref: NO REFERENCE INFORMATION        Ref#2:
Payor: Shipper                           Ref.#3:

- Fuel Surcharge - FedEx has applied a fuel surcharge of 7.00% to this shipment.
- Distance Based Pricing, Zone 2

| | | Sender | Recipient |
|---|---|---|---|
| Automation | USAB | DEBRA BROWN | BRIAN MOYNIHAN |
| Tracking ID | 866562091300 | SELF AUDIT, INC | CHIEF EXECUTIVE OFFICER BANK O |
| Service Type | FedEx Standard Overnight | 20 OAK ST # 2 | 100 FEDERAL ST |
| Package Type | FedEx Pak | BEVERLY MA 01915-2230 US | BOSTON MA 02110 US |
| Zone | 02 | | |
| Packages | 1 | | |
| Rated Weight | 2.0 lbs, 0.9 kgs | | |
| Delivered | Jan 14, 2010 08:59 | | |
| Svc Area | A1 | Transportation Charge | 18.15 |
| Signed by | A.GOUDEY | Fuel Surcharge | 1.27 |
| FedEx Use | 001306605/0001283/_ | Total Charge                    USD | $19.42 |

|  | | | |
|---|---|---|---|
| | **Shipper Subtotal** | **USD** | **$19.42** |
| | **Total FedEx Express** | **USD** | **$19.42** |

Exhibit 2

 **Bank of America**

Office of the CEO & President

February 25, 2010

Ms. Krista Roche, Mediator
Public Inquiry & Assistance Center
Office of Attorney General Martha Coakley
100 Cambridge Street
Boston, MA 02114

Re: Bank of America account ending 2997, Ms. Debra Brown

Dear Ms. Roche;

Bank of America's Office of the CEO & President acknowledges receipt of your inquiry regarding Ms. Brown's modification request, dated January 15, 2010. As a Customer Advocate, I welcome the opportunity to respond to these concerns.

We understand from your correspondence that Ms. Brown has been attempting to obtain a loan modification to bring her account current since April 2009, and a foreclosure sale date of January 20, 2010 had been set. Further, you indicated that Ms. Brown recently received both a repayment plan offer, and a cancellation of that offer on the same day. You requested that the sale date be cancelled, and that we work with Ms. Brown toward a loan modification. Please know that Bank of America is sympathetic to Ms. Brown's concerns; it is never our intent to frustrate a valued customer.

Our records indicate that Ms. Joelayn Oberg from our Home Retention Division has been in contact with Ms. Brown since August 2009. During the initial conversations, Ms. Brown advised Ms. Oberg that she would be attempting to bring her account current on her own, without a modification. She also made at least one settlement offer, but that offer was declined as it was less than the total amount due to bring her account current. Ms. Brown later said that she would be interested in a modification, but that her former husband, Mr. Brown, would not likely sign any modification offer.

Ms. Oberg has advised Ms. Brown on more than one occasion that we will one of two items in order to proceed further; 1) a quit claim deed showing that Mr. Brown no longer has interest in the property, and then we could proceed with a modification review, or 2) a commitment to remitting some amount of up front funds in order to start a repayment plan. To date, Ms. Brown has not provided a quit claim deed, and has not been inclined to commit to any amount to start a repayment plan. The foreclosure sale of January 20, 2010 was cancelled, but a new date will be scheduled if Ms. Brown does not provide Ms. Oberg with what she needs in order to move forward on either home retention strategy.

If you have any questions about the information contained in this letter, please contact me at 972.526.2146 between 8:00 a.m. and 5:00 pm Central.

Sincerely,

Marck Weir
Customer Advocate
Office of the CEO & President
Bank of America



Executive Customer Relations
Office of the CEO and President

*Exhibit 3*

April 6, 2010

Ms. Debra Brown
PO Box 5265
Beverly, MA 01915

Bank of America account ending: 2997

Dear Ms. Brown:

Bank of America's Office of the CEO and President acknowledges receipt of your inquiry, dated January 11, 2010.  As a Customer Advocate, I welcome the opportunity to respond to your concerns.  We understand that this may be a difficult time for you and your family, and we are working hard to assist you.

We have attempted to contact you to obtain the information required to consider you for a repayment plan on multiple occasions.  Regrettably, our attempts have been unsuccessful.  We will need the following information from you in order to review your account for a repayment plan:

- Financial Statement (form enclosed)
- IRS Form 4506-T or 4506T-EZ
- Most recent tax return with all schedules
- Copies of pay stubs for the immediate past two months
- Copies of bank statements for the immediate past two months
- Reliable, third-party documentation of any other earned income, including but not limited to the following:
  - If you are self employed:  the most recent quarterly Profit and Loss Statement with year to date earnings
  - If you receive benefit income:  evidence of the amount and frequency of the benefits, plus evidence of receipt of payment
  - If you receive unemployment benefits:  a monetary determination letter and evidence of the duration of benefit eligibility
  - If you would like to include alimony, separation maintenance, or child support income:  copies of a divorce decree, court decree or legal agreement filed with the court that provides the amount, frequency, and duration of payments, plus evidence of receipt of payment

Please fax the information to the attention of the undersigned at **1.704.683.7034** within the next seven calendar days.  At this time, the file in our office has been closed.  However, upon receipt of the above-mentioned information,

Recycled Paper

April 6, 2010
Ms. Debra Brown
Page Two


Bank of America will re-open the file for further review and look at every available repayment plan option to determine whether you are eligible for assistance.

Thank you for this opportunity to be of service.  In the event you should require additional assistance, please contact me at 1.336.333.7239, Monday through Friday, 9 a.m. to 6 p.m., Eastern.

Sincerely,

Tony Hummel
Customer Advocate
Office of the CEO and President


Enclosures


cc:  Office of the Comptroller of the Currency, Case# 1063631

**Bank of America**

Bank of America, Office of the CEO and President
100 North Tryon Street, Charlotte, NC 28255-0001

PRESORTED
FIRST CLASS

UNITED STATES POSTAGE
$ 00.46²
02 1M
000 4253874   APR 14 201
MAILED FROM ZIP CODE 28277

[April 14, 2010]

Ms. Debra Brown
PO Box 5265
Beverly, MA 01915

639027823   106   BMBRN31   01915

*Exhibit 4*

**Bank of America** ⮞⮞⮞

Executive Customer Relations
Office of the CEO and President


May 7, 2010


Ms. Debra Brown (f/k/a Debra Bauhaus)
99 Homestead Circle
South Hamilton, MA 01982


Bank of America mortgage account ending: 2997

Dear Ms. Brown:

Bank of America's Office of the CEO and President acknowledges receipt of your most recent correspondence, dated April 21, 2010. As a Customer Advocate, I welcome the opportunity to respond to your concerns.

As I understand your concerns, you state Bank of America committed fraud by misrepresenting the Office of the Comptroller of Currency.  In addition, on your original complaint dated January 11, 2010, you expressed concerns with the foreclosure proceedings of your home and the ability to obtain assistance from the Bank of America through the Making Home Affordable (MHA) program.

Our records indicate that on August 20, 2009, Ms. Joelayn Oberg, a Bank of America Loan Service Specialist contacted you to obtain financial records in order to review your mortgage loan for an MHA modification. During this telephone conversation, Ms. Oberg informed you that due to the foreclosure proceedings of your home, regular payments would not be accepted; however, Ms. Oberg offered to request reinstatement figures including all cost and have them mailed to you.  In the event that Ms. Oberg was not able to fully reinstate your account, she advised to continue to set funds aside.

Our records further indicate that Bank of America did not receive the financial documents, which were requested by Ms. Oberg, until September 9, 2009.  On September 19, 2009, Ms. Oberg reached out to you via telephone and left a message requesting clarification regarding your desire to reinstate the loan.  On October 5, 2009, you contacted Ms. Oberg stating you had received a notification that your home had been sold during a foreclosure auction; however, after further research from Ms. Oberg, it was discovered this was not the case.  On October 22, 2009, you contacted Ms. Oberg and informed her that Mr. Brown was not in favor or signing any loan modification documents; therefore, you requested to withdraw your application and work with a foreclosure attorney to fully reinstate your loan.

On December 8, 2009, Bank of America received an electronic e-mail from your attorney at Harmon Law Offices stating no payments had been made to the account as previously agreed.  On January 4, 2010, you contacted Ms. Oberg requesting a re-consideration of your loan for a modification; however, Ms. Oberg informed you that per your previous request, your case had been closed, as you would be working directly with the Harmon Law Offices.  In addition, Ms. Oberg informed you that in order to move forward, a Quit Claim deed reflecting Mr. Brown releasing all interest in the property was needed, and the commitment to use available funds towards a repayment plan.  At this time, your mortgage loan was 18 months past due with $45,000.00 in payments, escrow, and attorney's fees due on your loan.

Bank of America, CORPORATE CENTER
100 North Tryon St., Charlotte, NC 28255-0001

♻Recycled Paper

May 7, 2010
Ms. Debra Brown
Page Two


On January 6, 2010, Ms. Oberg received your fax requesting settlement for the past due amount for $22,734.68 and all fees to be waived. Ms. Oberg informed you that a settlement was not an option and restated the need for a Quit Claim Deed and the commitment to use available funds towards a repayment plan.

On January 13, 2010, Ms. Oberg Federal Expressed a letter addressing your January 4, 2010, and January 9, 2010 correspondence and once again requesting the Quit Claim Deed. In Ms. Oberg's letter, she offered a repayment plan contingent upon receiving the appropriate documents needed by January 18, 2010. The proposed repayment plan consisted of twelve payments of $7,422.07 each, which is the past due amount of $48,744.29 divided into twelve months , $4,062.02, plus the regular monthly payment of $3,360.05, which based on the financial information you had provided your income will support. Our records indicate that Bank of America did not receive Quit Claim Deed until January 31, 2010. As of May 7, 2010, Bank of America has postponed the sale of your home in two occasions and has requested to postpone the upcoming sale date of May 10, 2010, to your investor FNMA; however, no answer has been received.

Ms. Brown, your original complaint dated January 11, 2010, was filed with the Office of the Comptroller of Currency who governs Bank of America; therefore, all correspondence sent from Bank of Americato you, must be copied to the OCC as they required resolution.

Ms. Brown, per the MHA government guidelines, all financials must current; therefore, we will need the following information from you in order to review your account for a repayment plan:

- Financial Statement (form enclosed)
- IRS Form 4506-T or 4506T-EZ
- Most recent tax return with all schedules
- Copies of pay stubs for the immediate past two months
- Copies of bank statements for the immediate past two months
- Reliable, third-party documentation of any other earned income, including but not limited to the following:
  - If you are self employed: the most recent quarterly Profit and Loss Statement with year to date earnings
  - If you receive benefit income: evidence of the amount and frequency of the benefits, plus evidence of receipt of payment
  - If you receive unemployment benefits: a monetary determination letter and evidence of the duration of benefit eligibility
  - If you would like to include alimony, separation maintenance, or child support income: copies of a divorce decree, court decree or legal agreement filed with the court that provides the amount, frequency, and duration of payments, plus evidence of receipt of payment

May 7, 2010
Ms. Debra Brown
Page Three

Please fax the information to Bank of America Home Retention Department at **1.866.603.4755,** no later than May 17, 2010.  Upon receipt of the above-mentioned information, Bank of America will re-open the file for further review and look at every available loan modification option to determine whether you are eligible for assistance. In the event you need further assistance, please contact Ms. Marina Martinez a Bank of America Loan Service Specialist at 1.800.405.0078 ext. 5405 or 1.805.520.5405.

Bank of America continually strives to provide excellent customer service, and we appreciate your bringing your concerns to our attention.  Thank you for this opportunity to be of service.  I can be reached Monday through Friday, from 9 a.m. to 6 p.m., Eastern.

Sincerely,

Tatiana P. Lozada
Customer Advocate
Office of the CEO and President

**Bank of America**

Bank of America, Office of the CEO and President
100 North Tryon Street, Charlotte, NC 28255-0001

642849719   161   DMBRN31   01982

Ms. Debra Brown (f/k/a Debra Bauhaus)
99 Homestead Circle
South Hamilton, MA 01982

PRESORTED
FIRST CLASS





UNITED STATES POSTAGE

$ 00.357

02 1M
000 425874   MAY 11 2010
MAILED FROM ZIP CODE 28202

**Bank of America**

Executive Customer Relations
Office of the CEO and President

July 9, 2010

(Exhibit 5)

Krista Roche
State of Massachusetts
Office of the Attorney General
One Ashburton Place
Boston, MA 02108

Bank of America account ending: 2997

Dear Ms. Roche:

Bank of America's Office of the CEO and President acknowledges receipt of our mutual customer Ms. Debra Brown's correspondence dated April 13, 2010, which was forwarded to us. As a Customer Advocate, I welcome the opportunity to respond to your concerns.

In your correspondence you stated that Ms. Brown's request to obtain a loan modification has been unsuccessful. You further stated that Ms. Brown submitted the requested financial information numerous times since September 2009; however the account was referred for foreclosure and the foreclosure sale was put on hold. You are now requesting that the foreclosure sale date be postponed and the file reopened for workout assistance. We hope we have accurately conveyed the concerns that have been brought to our attention.

The concerns raised in your correspondence are currently the subject of active litigation. At this time, we cannot comment on, address or respond to the concerns raised in your correspondence. The following is the contact information for the outside counsel representing Bank of America:

Chad W, Higgins, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
(671) 570.1229

---

FROM BANK OF AMERICA                    (FRI) JUL  9 2010 14:21/ST. 14:20/No. 7523337615  P  3

July 9, 2010
Krista Roche
Page two


If you have any additional questions, please contact me directly at 1.818.713.2876, Monday through
Friday, from 7:30 a.m. to 4:30 p.m. Pacific.  Thank you for this opportunity to be of service.


Sincerely,


Cathy Talarico
Customer Advocate
Office of the CEO and President

Exhibit 6

E-mail Alerts

Anti-Money Laundering

Newsroom

Leadership

We will be decisive leaders at every level, communicating our vision and taking action to help build a better future.

# Code of Ethics, our foundation for success



To all Bank of America associates:

We are proud of the position we hold in helping serve as an engine of growth and success for millions of individuals, households, families and businesses of every size. With this honor comes a responsibility for ethical behavior in everything we do.

The Bank of America Code of Ethics applies to everyone who is employed by our company — all associates and directors. The code, which is based on our company's core values, spells out our shared commitment to the highest standards of conduct.

You should look at our Code of Ethics as our core values in action. The language we use to describe our values is brief and aspirational — it represents the spirit of our culture. The code of ethics provides greater detail and provides the specific guidance we need in certain common situations, or when faced with particular circumstances, to translate our values into action as we engage with each other, with customers, clients, shareholders, vendors and, in general, when we compete in the marketplace.

Trust is at the heart of what we do. Our customers and clients want to know they are doing business with a financial services company that they can trust; that all our associates will treat them fairly, communicate forthrightly, and make clear, honest and ethical decisions. Trust is crucial to the value we provide our customers, and it's fully expressed through the combination of our Core Values and our Code of Ethics.

The Code of Ethics course that we review each year contains new information this year about making good decisions, interactions with government employees, identifying conflicts and anti-bribery and anti-corruption. Each of us is required to acknowledge our responsibility for reading, understanding and complying with the guidelines in this document. If you have any questions, talk with your manager.

I thank you for working hard to win in the marketplace and produce results for our shareholders. As we work together to achieve our goals, it is equally important that we commit to one another that we will always do business and grow the right way — with the honesty, integrity and fair dealing that our Code of Ethics and our Core Values require.

This shared commitment is the foundation on which our company stands, and on which we will build a successful future for our customers, clients, shareholders, communities and one another. Thank you for your personal commitment to upholding our values and ethical standards every day.

Brian T. Moynihan

# Table of Contents

**Introduction** .......... 5

**Section 1:**

**Governance and Administration** 6

· Reporting certain conduct 6

· Accounting 7

· Observing the Code of Ethics and annual training 7

· Code waivers 7

· Interactions with government employees 7

· Making good decisions 8

**Section 2:**

Conflicts of Interest 9

Bank of America | Investor Relations | Code of Ethics

# Bank of America

Search

## Investor Relations

Overview

Corporate Governance

Officers and Directors

Committee Composition

Governance Guidelines

Code of Ethics

Section 16 Filings

Contact the Board

Stock Information

Financial Releases

Services for Shareholders

Fixed Income Investor Relations

Securitization

Dividend History

Annual Reports

SEC Filings

Call Reports

Basel II Pillar 3 Reports

Investor Fact Book

Webcasts

Presentations

Analyst Coverage

Earnings Estimates

Fundamentals

Ownership Summary

## Code of Ethics

📄 Code of Ethics

**Bank of America Corporation**

**Code of Ethics**

Bank of America

## The Bank of America Core Values

*The following five values represent what we believe in as individuals and as a team, and how we aspire to interact with our customers, our shareholders, our communities and one another.*

**Doing the Right Thing**

We have the responsibility to do the right thing for our customers, shareholders, communities and one another

**Trusting and Teamwork**

We succeed together, taking collective responsibility for our customers' satisfaction.

**Inclusive Meritocracy**

We care about one another, value one another's differences, focus on results and strive to help all associates reach their full potential

**Winning**

We have a passion for achieving results and winning – for our customers, our shareholders, our communities and one another

· Gifts and entertainment ........ 10

· Information disclosure and dissemination ..... ..... 11

· Outside activities and relationships ........ 11

· Service providers ........ 11

**Section 3:**

**Confidentiality, Privacy and Information Security** .......... 12

· Customer information ........ 12

· Bank of America information ..... 12

· Associate information ......... 12

· Supplier information ......... 12

**Section 4:**

**Bank of America Assets** ..... ....... 13

**Section 5:**

**Financial Responsibility** ............. 14

· Borrowing ................... 14

· Business expenses.............. 14

· Personal fees ................... 14

**Section 6:**

**Compliance with Law** ............... 15

· Anti-money laundering ............ 15

· Market timing and excessive trading prohibitions ............... 15

· Fair dealing.......... ....... 15

· Corporate opportunities ..... 16

· Political contributions ...... 16

· Anti-bribery/Anti-corruption ...... 16

**Section 7:**

**Restrictions on Trading in Securities or Financial Instruments; Prohibition Against Misuse of Material, Nonpublic Information** ...... 17

· Restrictions on trading in Bank of America securities ..... 17

· Restrictions on trading in other securities or financial instruments ............. 18

· Information walls ........ 18

## Introduction

Bank of America Corporation [1] is committed to the highest standards of ethical and professional conduct. To help you understand how these standards apply to you and your teammates, this Code of Ethics provides basic guidelines of business practice, and professional and personal conduct you are expected to adopt and uphold as a Bank of America associate.[2]

The public judges Bank of America by the actions of its associates. This code is intended to guide your conduct to instill public trust and confidence.

Case 1:10-cv-11085-GAO   Document 32-1   Filed 12/28/10   Page 55 of 80

The following pages include sections on:

- Avoiding conflicts, or even the appearance of conflicts, between personal interests and the interests of Bank of America, its shareholders or customers.
- Keeping information confidential and secure.
- Properly caring for and protecting Bank of America property and assets.
- Conducting your personal financial affairs responsibly and keeping your business expenses in order.
- Not taking any action, either personally or on behalf of Bank of America, which violates any law, regulation or internal policy.
- Avoiding misuse of material, nonpublic information relating to securities or other financial instruments.
- Promptly reporting any knowledge or information about Bank of America associates or agents you suspect of committing crimes.

Your division or team may have additional or more restrictive policies you must follow. Your manager or compliance officer will provide you with any manuals, policies and procedures related to your specific job. You should visit the internal website for your line of business to determine all policies applicable to you and refer to the Associate Handbook for additional information on associate conduct.

The corporation may publish additional policies as deemed necessary or appropriate.

You are expected to follow the information in this code, other policies referred to in this document, additional policies that apply to your job, and the spirit and letter of all laws and regulations. Violation of the Code of Ethics or these other policies, laws and regulations constitutes grounds for disciplinary action, including termination of employment and possible legal action.

The terms "Bank of America" and "corporation" refer to Bank of America Corporation and its direct and indirect subsidiaries. For convenience, we use these terms because various companies within Bank of America use this booklet. The use of these terms here or in other publications does not mean you are an employee of Bank of America Corporation. The use of these terms or issuance of this booklet does not change your existing at-will employee status.

The term "associate" refers to any Bank of America director, officer or employee. The 2010 Code of Ethics supersedes and replaces any prior communications, policies, rules, practices, standards and/or guidelines to the contrary, whether written or oral. To the extent there are any conflicts with the Associate Handbook, the language of this code controls. If any provision of this code conflicts with your local law, the provisions of your local law apply.

# Section 1: Governance and Administration

**If you have any questions or concerns regarding the Code of Ethics:**

- Consult your manager
- Contact the Personnel Center's Advice and Counsel at **1.800.556.6044**

**To report complaints or possible violations regarding ethical issues, call the Ethics and Compliance Hotline:**

- Callers in the U.S., Canada, Puerto Rico and U.S. Virgin Islands call toll-free **1.888.411.1744**.
- For other international associates, toll-free dialing instructions will vary by location. Please see the Ethics and Compliance Hotline International Dialing Instructions for details.

Complaints can be submitted anonymously and in complete confidence. Because of strict data privacy laws, particularly in the European Union, associates working outside the U.S. may be subject to certain limitations on reporting to the Ethics and Compliance Hotline. If you are outside the U.S., consult your local policies and procedures on reporting, or contact your local human resources or compliance department, and they will be able to advise you on the rules applicable to you.

The Ethics Oversight Committee resolves issues regarding the Code of Ethics, including potential violations and certain exceptions, and will review the information from the Ethics and Compliance Hotline. The committee includes the corporation's general auditor, general counsel, principal compliance executive and chief administrative officer.

## 1.1 Reporting certain conduct

Bank of America can be held criminally liable if one of its associates or agents commits certain crimes. You must promptly report any knowledge or information about employment-related conduct by another associate or agent of the corporation that you reasonably believe to be:

- A crime
- A violation of law or regulation

Case 1:10-cv-11085-GAO   Document 32-1   Filed 12/28/10   Page 56 of 80

- A dishonest act, including misappropriation of funds or anything of value from Bank of America or the improper recording of corporation's assets or liabilities
- A breach of trust

**Non-Retaliation**

You must report the relevant facts, as well as any other circumstances or activities that may conflict with the Code of Ethics, to the Ethics and Compliance Hotline. **You will not be retaliated against** for reporting information in good faith in accordance with this policy.

**1.2 Accounting**

To ensure the integrity of its consolidated financial statements, Bank of America has established internal accounting and operating controls and procedures, including disclosure controls and procedures, and a Disclosure Committee.

All associates responsible for the preparation of the corporation's financial statements, or who provide information as part of that process, must maintain and adhere to these controls so that all underlying transactions, both within Bank of America and with third parties, are properly documented, recorded and reported.

In addition, all associates have the responsibility to promote full, fair, accurate, timely and understandable disclosure in reports and documents that Bank of America files with or submits to the U.S. Securities and Exchange Commission or other global regulators, as well as in other public communications made by the corporation.

The Audit Committee of the Board of Directors has established procedures for the receipt, retention and treatment of complaints regarding accounting, internal accounting controls or auditing matters. You may raise any such concerns to the Ethics and Compliance Hotline. You will not be retaliated against for reporting information in good faith in accordance with this requirement.

**1.3 Observing the Code of Ethics and annual training**

All associates are required to agree to observe the Code of Ethics and take Code of Ethics training on an annual basis.

**1.4 Code waivers**

The Board of Directors must approve any waiver of the Code of Ethics for the principal executive officer, the principal financial officer, the principal accounting officer and any executive officer or director. The corporation will promptly disclose any such waiver on its website or through a press release or other public filing as required by law, regulation or applicable stock exchange rule.

**1.5 Interactions with government employees**

Interactions with government entities and their employees may expose the corporation and its associates to a myriad of public policy, legal or compliance concerns. Prior to these contacts, you must confirm with your compliance officer if there are any limitations or requirements that apply to your contact (e.g., limits on gifts and entertainment, requirement to register as a lobbyist, responding to a subpoena).

You are expected to be particularly vigilant when interacting with government employees and must not engage in behavior that could be seen as being intended to improperly influence a Bank of America business relationship. You must not offer, give or promise to give money or anything of value to any executive, official or employee of any government, agency, state-owned or controlled enterprise, political party or candidate for political office if it could be seen as being intended to influence a Bank of America business relationship. You must be sensitive to those situations or circumstances that could create an appearance of impropriety or potential conflict of interest, or raise bribery or corruption concerns

For more information, refer to the Conflicts of Interest and Compliance with Law sections of this Code of Ethics.

**1.6 Making good decisions**

Countless decisions are made every day at Bank of America. Every decision we make as an institution and as associates impacts not only the corporation and our fellow associates, but our shareholders and communities as well

Case 1:10-cv-11085-GAO   Document 32-1   Filed 12/28/10   Page 57 of 80

We all strive to make good decisions and to do the right thing. However, making decisions is not always easy. While in certain situations the right result is obvious and the decision can be made easily, in many situations the right result is less clear cut or you may be facing time or other business pressures. Regardless of the nature of a particular decision, keep the following in mind to help you make informed, thoughtful decisions:

- Make sure you have all of the facts, both positive and negative
- Identify all potential options and their consequences
- Take into account relevant laws, policies and values
- Consider competing interests

## Section 2: Conflicts of Interest

You must avoid conflicts—or even the appearance of conflicts—between personal interests and the interests of Bank of America, its shareholders or customers.

It is impossible to define every action that could be reasonably interpreted as a conflict of interest. This section defines several potential conflicts of interest as examples that you must be aware of:

- Gifts and entertainment
- Information disclosure and dissemination
- Outside activities and relationships
- Service providers

### What is a conflict of interest?

As a Bank of America associate, you must recognize that conflicts of interest may occur when:

- Your personal interests or activities compete or interfere—or even appear to compete or interfere—with your obligations to the corporation, its shareholders or customers
- The interests of two or more of the corporation's customers conflict, potentially giving rise to a material risk of damage to the interest of one or both of the customers
- The corporation places its interests over the interests of its customers, without legitimate reason

Such situations might interfere with your judgment or ability to properly fulfill your Bank of America duties.

### Steps to take if you think a conflict of interest may exist:

- Seek counsel through your manager, your primary compliance or risk officer, or your designated Conflicts Officer
- Conflicts Officer information can be accessed through the Enterprise Conflicts Management website
- Associates may also contact the Ethics and Compliance Hotline (1.888.411.1744 for the U.S., Canada, Puerto Rico and U.S. Virgin Islands). International associates should refer to the Code of Ethics website for toll-free dialing instructions.

Conflicts of interest also arise when you or your family members receive improper personal benefits as a result of your position in the corporation.

Some general considerations for identifying potential conflicts of interest:

- **Perception:** Could the activity or transaction be perceived as a potential conflict by others? If all the related facts were made public, would you or the corporation be embarrassed?
- **Intent:** Is the activity or transaction being offered in an attempt to influence the recipient's judgment?
- **Impact:** Will the corporation, our shareholders or our customers be disadvantaged without legitimate reason if you participate in the activity or transaction?
- **Objectivity:** Will participation in the activity or transaction affect your ability to be objective with regard to any decision made in the legitimate exercise of your job responsibilities?
- **Time Considerations:** If an outside activity, will the time required interfere with your ability to effectively carry out your job responsibilities?

More information is available through the Enterprise Conflicts Management website

## 2.1 Gifts and entertainment

A conflict of interest may arise when you provide or receive gifts or entertainment. Your activities must be legal, and should not be frequent or extravagant. You must not accept or provide entertainment to or from current or prospective customers or suppliers unless it is for a valid business purpose, providing an opportunity for a meaningful business conversation. You should not participate in any activity that could embarrass or reflect poorly on Bank of America.

Before entertaining or giving any item to a government employee or public official, you must contact your senior business manager and consult with your compliance officer.

You must not give or receive gifts of cash or cash equivalent instruments to or from current or prospective customers or suppliers, unless given as part of an approved Bank of America customer satisfaction program, in which case, such gift(s) must comply with all program restrictions.

These restrictions are not intended to apply to gifts or entertainment based on family relationships where the circumstances make it clear that it is the relationship—rather than Bank of America's business—that is the motivating factor for giving the gift.

You are expected to be aware of and comply with Bank of America's Enterprise Gifts & Entertainment Policies, and all other policies and procedures on gifts and entertainment that relate to your area of responsibility. To learn more about Bank of America's gift and entertainment guidelines and restrictions, please visit the Gifts and Entertainment website.

## 2.2 Information disclosure and dissemination

A conflict of interest may arise if you make public certain types of information you have access to as part of your job.

You must not inappropriately share or disclose to the public proprietary information concerning Bank of America, including such information about clients, vendors, market conditions or business events. Even if you inadvertently or accidentally share or disclose such information, a conflict of interest may arise.

Additional information is available in "Section 3: Confidentiality, Privacy and Information Security."

## 2.3 Outside activities and relationships

A conflict of interest may arise from your activities, employment or other relationships outside Bank of America.

You must not act on behalf of or appear to represent the corporation in any transaction outside your role and responsibilities with Bank of America. Inform your manager and obtain his or her approval before you:

- Pursue additional employment outside Bank of America
- Engage in an independent business venture
- Perform services for another business organization
- Run for or accept appointment to any political office

You must not pursue such outside activities and relationships during Bank of America business hours or allow any outside business, civic or charitable activities to interfere with your job performance. In general, Bank of America strongly discourages associates other than the corporation's outside directors from serving on a board of a for-profit organization in a personal capacity, particularly the board of a public company.

For more information, please visit the Outside Directorships website.

## 2.4 Service providers

A conflict of interest may arise from your relationships with vendors or other service providers. If you are authorized to approve or award orders, contracts and commitments to suppliers of goods or services, you must do so based on objective business standards to avoid any real or perceived favoritism.

Case 1:10-cv-11085-GAO   Document 32-1   Filed 12/28/10   Page 59 of 80

# Section 3: Confidentiality, Privacy and Information Security

You must keep the following information confidential and secure:

- Customer information—You must not access customer information or use customer information except for appropriate business purposes and must protect the confidentiality and security of customer information. You should be familiar and handle customer information in accordance with Bank of America's Privacy Policy for Consumers, which details our commitment to privacy and information protection, and internal privacy and information security policies and standards. You should also be familiar with the "need to know" policy for material, nonpublic information and certain other confidential information related to our corporate customers.
- Bank of America information—You must keep confidential and secure any nonpublic information about Bank of America. Such information you have about Bank of America activities and plans should only be shared within the corporation with other associates who "need to know" the information to perform their duties. Consult your manager if you have questions about sharing information about Bank of America on a "need to know" basis.
- Associate information—You must keep confidential and secure any information you have about other Bank of America associates. The Associate Privacy Policy outlines responsibilities for associates, managers and service providers when requesting, using, transmitting and disposing of associate information.
- Supplier information—You must keep confidential and secure any information you have about the corporation's purchase of products or services. Sharing this information with the wrong source could provide an improper advantage to the supplier or its competitors and violate agreements Bank of America has with suppliers. In some instances, it also might violate the "need to know" policy for material, nonpublic information.

Every year you are required to take Information Protection and Privacy training. This training highlights:

- Proper methods to protect confidential and proprietay information for Bank of America, its customers and associates
- Appropriate use of electronic communications
- Privacy Policy for Consumers
- Associate Privacy Policy

For more information on privacy, visit the Privacy website. The Enterprise Information Management website contains helpful information about confidentiality and information security at Bank of America. Section 7 of this Code of Ethics explains the prohibitions on misuse of material, nonpublic information, and the Enterprise Information Wall Policy, as well as relevant line of business specific policies, and the "need to know."

# Section 4: Bank of America Assets

You must properly care for and protect Bank of America property and assets, which should be used for legitimate business purposes only. You must not:

- Steal, embezzle or misappropriate money, funds or anything of value from Bank of America. Doing so subjects you to potential disciplinary action, according to the law and Bank of America policy.
- Use Bank of America assets for personal gain or advantage.
- Remove Bank of America assets from the facilities unless you have your manager's approval.
- Use official Bank of America stationery, the corporate brand, documents or the Bank of America name for nonofficial purposes, since such use implies endorsement by the corporation.
- Misuse your internet, phone or email privileges. The corporation's private computer and phone systems are primarily for business purposes and subject to review, monitoring and recording at any time without notice or permission. More information on these and other policies is available in the Working at Bank of America section of the Associate Handbook.

| Bank of America assets include, but are not limited to items such as |
|---|
| • Computer software • Customer lists or information • Data processing systems • Databases • Equipment • Furnishings • Files • Ideas • Information about corporate or customer transactions | • Innovations • Intellectual property • Money and funds • Records • Reference materials • Reports • Supplies • Technology • The corporation's private computer systems including your email and your internet access |

Remember, any assets you create for Bank of America or while using Bank of America resources are the corporation's property, and remain its property even if you leave Bank of America.

Bank of America has guidelines with which you should be familiar to ensure the protection of intellectual property, records and other information. Please visit the following websites:

- Intellectual Capital & Property
- Document Management
- Secure Destruction Services

## Section 5: Financial Responsibility

You should conduct your personal financial affairs responsibly and keep your business expenses in order.

You are responsible for your financial activities in the following areas:

- Borrowing—You may not personally borrow money from or lend it to suppliers, customers or other associates unless the loan is:

  - To or from a family member or
  - From an institution normally in the business of lending and
  - There is no conflict of interest.

You may make an occasional loan of nominal value (such as for lunch) to another associate or acquaintance, as long as no interest is charged.

- Business expenses—You must report your business expenses accurately and in a timely manner. You must not use your business credit card for any purpose other than appropriate business expenses.

More information on appropriate business expenses is available in the Corporate Expense Policies and the Excessive or Luxury Expenditures Policy.

- Personal fees—You may not accept fees or commissions for any transaction on behalf of Bank of America unless you are specifically authorized to do so.

### Your duty to cooperate

You must cooperate with any internal or external investigation or audit, or any regulatory examination. Immediately inform your manager if you are the subject of an external investigation unless laws, regulations or the investigating authority prohibit you from doing so.

## Section 6: Compliance with Law

You must not take any action, either personally or on behalf of Bank of America, which violates any law, regulation or internal policy affecting Bank of America business.

It is impossible to list all applicable laws. This section presents several topics regarding regulations that Bank of America associates must be aware of:

- Anti-money laundering
- Mutual fund securities
- Fair dealing
- Corporate opportunities
- Political contributions
- Anti-bribery/Anti-corruption

### 6.1 Anti-money laundering

Money laundering is disguising the proceeds of criminal activity through a series of otherwise legitimate transactions.

Every associate has a role to play in Bank of America's anti-money laundering (AML) efforts. For example, you:

- Should be able to recognize "red flags" and report potentially suspicious or unusual activities
- Must make reasonable efforts to determine the true identity of all customers
- Must follow "Know Your Customer" procedures for your line of business
- Must complete all required AML training courses for your line of business. For an overview of AML, visit the Anti-Money Laundering website.

## 6.2 Market timing and excessive trading prohibitions

Bank of America prohibits late trading, unauthorized mutual fund market timing activities and dissemination of confidential information concerning mutual fund portfolio positions. These prohibitions apply whether you are:

- Engaged in a personal securities transaction or one on behalf of others, including trading for proprietary or fiduciary accounts of the corporation
- Trading in Bank of America proprietary funds or third-party mutual funds

In addition, Bank of America prohibits excessive trading and market timing by participants in Bank of America retirement plans.

For more information, please refer to the corporation's Policy on Excessive Trading and Market Timing in the Bank of America Retirement Plans.

## 6.3 Fair dealing

Associates are expected to deal fairly with Bank of America's customers, competitors, suppliers and other associates.

- You should not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of facts or any other unfair-dealing practice.
- You must not give or accept bribes, kickbacks, promises or preferential extensions of credit.
- You must approve or award orders, contracts and commitments based on objective business standards to avoid favoritism or perceived favoritism.
- You must not conspire or collude in any way with competitors.

## 6.4 Corporate opportunities

You must not deprive the corporation of an opportunity by:

- Competing with the corporation or using corporate property, information or your position for personal gain
- Taking for yourself an opportunity that belongs to the corporation or helping others do so if they are in a position to divert a corporate opportunity for their own benefit

## 6.5 Political contributions

In general, you may make personal political contributions, either directly or through corporation-sponsored or other political action committees, as legally permitted. Because of industry regulations and state or other local laws, associates of particular lines of business or associates with certain coverage responsibilities may be restricted from making some political contributions or engaging in certain political activities. You must confirm with your compliance officer if you are subject to such limitations prior to making political contributions or engaging in political activities.

Under no circumstance may you coerce or pressure other associates to make political contributions. Associate campaign contributions are not reimbursable by Bank of America, and campaign fundraising or solicitation activities on Bank of America premises or with the use of Bank of America resources are restricted.

## 6.6 Anti-bribery/Anti-corruption

All associates are expected to comply with the U.S. Foreign Corrupt Practices Act as well as all other anti-bribery and anti-corruption laws. You may not give, promise or offer anything of value to any customer, government employee or any other person for the purpose of improperly influencing a decision, securing an advantage, avoiding a disadvantage or obtaining or retaining business. If you engage in such behavior, you expose yourself and the corporation to civil and/or criminal liability, significant reputational harm and undermine the trust of our customers, shareholders and communities.

For more information, visit the Anti-Bribery/Anti-Corruption website.

# Section 7: Restrictions on Trading in Securities or Financial Instruments; Prohibition Against Misuse of Material, Nonpublic Information

### 7.1 Restrictions on trading in Bank of America securities

You must not buy, sell, recommend or trade in Bank of America securities—either personally or on behalf of someone else—while in possession of material, nonpublic information relating to corporation, except through trading programs pre-approved by the Legal Department.

In addition, you must not communicate or disclose such information to others who may trade in Bank of America securities. Doing so may not only be a violation of your duty to keep such information confidential, but also may be a violation of U.S. federal and state laws, and the laws of many countries.

If you are a Bank of America Corporation director or have been designated as an "insider" by the corporation, you must obtain special approvals before trading in Bank of America securities.

You must not engage in speculative trading of Bank of America securities. This generally prohibits short sales and trading in puts, calls and other options or derivatives with respect to such securities, unless such transactions are for legitimate, nonspeculative purposes. If you have questions regarding the potential speculative nature of your transaction, please talk with your manager or line of business compliance officer. *Please note:* This paragraph does not apply to the exercising of Bank of America associate stock options. For more information, please refer to Additional Guidance while Trading in Bank of America Securities.

### What is material, nonpublic information?

The definition of material, nonpublic information is broad. You should consider information to be material if a reasonable investor would consider it important in making an investment decision. Example include merger and acquisition information, significant leadership changes and earnings-related and other significant financial information.

You should consider information nonpublic if it is not generally available to the investing public.

### 7.2 Restrictions on trading in other securities or financial instruments

If you are in possession of material, nonpublic information about securities or financial instruments, you are prohibited from buying, selling, recommending or trading such securities or financial instruments in breach of a duty of trust or confidence owed to the issuer of the securities or financial instruments, the shareholders of that issuer or any other person who is the source of the information.

In addition, you must not communicate or disclose such information to others who may misuse it. Doing so not only would be a violation of your duty of trust or confidence, but also may be a violation of federal and state laws, and the laws of many countries.

### 7.3 Information walls

To assist in the prevention of the misuse of material, nonpublic information, the corporation has adopted enterprise-wide information-wall policies. These policies restrict the flow of certain types of information between certain units, and apply to all full- or part-time associates, interns, temporary employees and contractors.

You must become familiar with, understand and comply with the Enterprise Information Wall Policy and all other policies and procedures that relate to your area of responsibility. These policies are designed to:

- Prevent the flow of information from associates in units that may receive material, nonpublic information about issuers of securities or financial instruments to associates in units that buy, sell or recommend securities and financial instruments to fiduciary and nonfiduciary accounts
- Provide additional guidance on prohibitions against the misuse of material, nonpublic information, including additional restrictions on personal trading for certain designated units
- Address other issues raised by the activities of each designated unit. For more information, please visit the Enterprise Information Wall Policy

# EXHIBIT 4



# The Commonwealth of Massachusetts
## William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

**COMMONWEALTH AUCTION ASSOCIATES, INC. Summary Screen**

Help with this form

**Request a Certificate**

**The exact name of the Domestic Profit Corporation:** COMMONWEALTH AUCTION ASSOCIATES, INC.

**Entity Type:** Domestic Profit Corporation

**Identification Number:** 043264113

**Old Federal Employer Identification Number (Old FEIN):** 000491987

**Date of Organization in Massachusetts:** 02/16/1995

**Current Fiscal Month / Day:** 12 / 31          **Previous Fiscal Month / Day:** 00 / 00

**The location of its principal office:**
No. and Street: 150 CALIFORNIA ST.
City or Town: NEWTON          State: MA          Zip: 02458          Country: USA

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:          State:          Zip:          Country:

**Name and address of the Registered Agent:**
Name: IRA D. TARLIN
No. and Street: 150 CALIFORNIA STREET
City or Town: NEWTON          State: MA          Zip: 02458          Country: USA

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| PRESIDENT | MARK P. HARMON | 437A DEDHAM STREET<br>NEWTON, MA 02459 USA |
| SECRETARY | MARK P. HARMON | 437A DEDHAM STREET<br>NEWTON, MA 02459 USA |
| TREASURER | IRA D. TARLIN | 45 COUNTRY WAY<br>NEEDHAM, MA 02492 USA |
| DIRECTOR | MARK P. HARMON | 437A DEDHAM STREET<br>NEWTON, MA 02459 USA |

**business entity stock is publicly traded:** __

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

Case 1:10-cv-11085-GAO   Document 32-1   Filed 12/28/10   Page 65 of 80

| Class of Stock | Par Value Per Share Enter **0** if no Par | Total Authorized by Articles of Organization or Amendments | | Total Issued and Outstanding |
| --- | --- | --- | --- | --- |
| | | *Num of Shares* | *Total Par Value* | *Num of Shares* |
| CNP | $0.00000 | 200,000 | $0.00 | 200 |

__  Consent          __  Manufacturer          __  Confidential Data          __  Does Not Require Annual Report

**X**  Partnership          __  Resident Agent          **X**  For Profit          __  Merger Allowed

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application For Revival
Articles of Amendment

[ View Filings ]          [ New Search ]

**Comments**

© 2001 - 2010 Commonwealth of Massachusetts
All Rights Reserved

[?]
Help

# EXHIBIT 5



Executive Customer Relations
Office of the CEO and President

May 7, 2010

Ms. Debra Brown (f/k/a Debra Bauhaus)

Bank of America mortgage account ending: 2997

Dear Ms. Brown:

Bank of America's Office of the CEO and President acknowledges receipt of your most recent correspondence, dated April 21, 2010. As a Customer Advocate, I welcome the opportunity to respond to your concerns.

As I understand your concerns, you state Bank of America committed fraud by misrepresenting the Office of the Comptroller of Currency. In addition, on your original complaint dated January 11, 2010, you expressed concerns with the foreclosure proceedings of your home and the ability to obtain assistance from the Bank of America through the Making Home Affordable (MHA) program.

Our records indicate that on August 20, 2009, Ms. Joelayn Oberg, a Bank of America Loan Service Specialist contacted you to obtain financial records in order to review your mortgage loan for an MHA modification. During this telephone conversation, Ms. Oberg informed you that due to the foreclosure proceedings of your home, regular payments would not be accepted; however, Ms. Oberg offered to request reinstatement figures including all cost and have them mailed to you. In the event that Ms. Oberg was not able to fully reinstate your account, she advised to continue to set funds aside.

Our records further indicate that Bank of America did not receive the financial documents, which were requested by Ms. Oberg, until September 9, 2009. On September 19, 2009, Ms. Oberg reached out to you via telephone and left a message requesting clarification regarding your desire to reinstate the loan. On October 5, 2009, you contacted Ms. Oberg stating you had received a notification that your home had been sold during a foreclosure auction; however, after further research from Ms. Oberg, it was discovered this was not the case. On October 22, 2009, you contacted Ms. Oberg and informed her that Mr. Brown was not in favor or signing any loan modification documents; therefore, you requested to withdraw your application and work with a foreclosure attorney to fully reinstate your loan.

On December 8, 2009, Bank of America received an electronic e-mail from your attorney at Harmon Law Offices stating no payments had been made to the account as previously agreed. On January 4, 2010, you contacted Ms. Oberg requesting a re-consideration of your loan for a modification; however, Ms. Oberg informed you that per your previous request, your case had been closed, as you would be working directly with the Harmon Law Offices. In addition, Ms. Oberg informed you that in order to move forward, a Quit Claim deed reflecting Mr. Brown releasing all interest in the property was needed, and the commitment to use available funds towards a repayment plan. At this time, your mortgage loan was 18 months past due with $45,000.00 in payments, escrow, and attorney's fees due on your loan.

Bank of America, CORPORATE CENTER
100 North Tryon St., Charlotte, NC 28255-0001

♻ Recycled Paper

# EXHIBIT 6

**HARMON LAW OFFICES, P.C.**
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

Scott C. Owens
(617) 558-0738 direct dial
(617) 243-4038 facsimile
sowens@harmonlaw.com

**Via Certified and First Class Mail**

November 24, 2010

Debra Brown
Brown & Associates
20 Oak Street, Suite 200
Beverly Farms, MA 01915

**RE:    99 Homestead Circle, South Hamilton, Massachusetts**
**93A Demand Letter**

Dear Ms. Brown:

The undersigned represents Harmon Law Offices, P.C. ("Harmon") relative to your October 26, 2010 correspondence, which purports to be a demand letter pursuant to Massachusetts General Laws Chapter 93A. Without waiving any right to challenge the sufficiency of your demand in litigation of this matter, this letter is provided in response to your demand as required by Chapter 93A. Harmon generally denies that it has engaged in any unfair and deceptive practices in the representation of its client, Bank of America ("BOA").

Your letter indicates that on January 13, 2010 you advised Harmon that you had filed complaints against BOA with the Massachusetts Attorney General's Office, the Massachusetts Department of Banks and the Office of the Comptroller of the Currency ("OCC"). Harmon has received no correspondence from any of these entities staying BOA's foreclosure of your property.

Your letter also indicates that on April 20, 2010 you advised Harmon that BOA's actions "[were] being investigated by the Federal Bureau of Investigation . . .; the Office of the Attorney General in New York and U.S. Securities and Exchange Commission." However, the letters you attached from the Department of Justice and the Attorney General merely state that they have received your complaint and will take further action "if appropriate." Harmon is aware of no further action by either the Department of Justice or the Attorney General in this matter.

Harmon does not have any correspondence from the OCC, acknowledging that the evidence submited demonstrates fraud. Harmon doubts that the OCC would have provided such a letter without any hearing or investigation of the matter. If it had, such a letter would no doubt have found a place among the 15 exhibits attached to your June 2, 2010 memorandum supporting your motion for preliminary injunction in the state court action. No such letter appears among those exhibits.

Harmon has seen correspondence from the Massachusetts Attorney General regarding this matter, but that correspondence has been limited to emails offering to facilitate a review for loan modification.  No where in any correspondence—other than your own—have we seen any allegation or accusation of fraud against you by BOA.

As an attorney you must know that Rule 1.2 is a shield to protect innocent parties from inappropriate actions cloaked with the legitimacy of attorney involvement.  It is not a sword to be wielded by opposing parties against their adversaries' chosen counsel.  Allowing the mere allegation of fraud to require an attorney to abandon its representation of a client's legal interest would result in the collapse of our legal system.  Harmon's continued representation of BOA in light of your accusations was not improper.

In addition, even if Harmon's conduct did violate Rule 1.2, Harmon nevertheless is not liable to you under Chapter 93A.  I direct your attention to the following:

"Actionable c. 93A conduct must occur in a 'business context'."  McGonagle v. Home Depot, U.S.A., Inc., 75 Mass.App.Ct. 593, 915 N.E.2d 1083, 1088 (2009)(quoting Lantner v. Carson, 374 Mass. 606, 611, 373 N.E.2d 973 (1978)).  "[T]he misconduct must have an entrepreneurial, commercial or business purpose, that it serve the actor's financial benefit or gain."  McGonagle (citing Darviris v. Petros, 442 Mass. 274, 278-281, 812 N.E.2d 1188 (2004)).  The challenged conduct must be "motivated by business or personal reasons."  McGonagle (quoting Feeney v. Dell, Inc., 454 Mass. 192, 212-213, 908 N.E.2d 753 (2009)).

"An attorney or law firm may incur a 93A liability to a non-client or to an adversary of its client . . if it joins its client in marketplace communications to the adversary rather than merely relays its client's positions."  Kirkland Construction Company v. James, 39 Mass.App.Ct. 559, 561-564, 658 N.E.2d 699 (1995)(emphasis added).  In such situations the attorney has arguably crossed from traditional representation into active participation in trade and commerce.

However, if the attorney or law firm confines itself to the functions of traditional representation such as the commencement of litigation against the adversary, First Enterprises, Ltd. v. Cooper, 425 Mass. 344, 347-348, 680 N.E.2d 1163 (1997), or the counseling about and drafting of testamentary documents, Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 459-460, 463, 681 N.E.2d 1189 (1997), it has not acted in a "business context" or injected itself into trade or commerce so as to trigger 93A exposure.

Harmon's actions in this matter were undertaken in the representation of its client, BOA, not for its own benefit or gain.  Harmon's conduct was motivated solely by its obligation to represent its clients' interests in enforcing the terms of a mortgage agreement following an acknowledged loan default.

Further, Harmon's participation in this matter was confined to those functions of traditional representation, specifically, the commencement of the Land Court action and preparation of statutory notices consistent with a mortgage foreclosure.  Harmon did not interact with you in any business context and, as such, Harmon's conduct could not trigger any 93A liability to you.

*Debra Brown*
*November 24, 2010*
*Page 3 of 3*

Harmon acknowledges that it continued to represent its client in spite of your letters. As set forth above, however, your letters merely alleged wrongdoing that has yet to be substantiated by any of the government entities that received your complaints. Any harm that you claim has been incurred as a result of the foreclosure proceedings is directly attributable to the default on the mortgage, and the circumstances leading thereto, and not to any action or inaction by Harmon.

Harmon declines to accept your demand for $960,000.00 in damages. Based upon the foregoing, which establishes that Harmon has acted properly in the representation of its client and that it is not liable to you under Chapter 93A, Harmon respectfully declines to offer any monetary settlement for your claims.

Please do no hesitate to contact me if you have any questions regarding this matter.

Sincerely,
HARMON LAW OFFICES, PC


Scott C. Owens, Esq.

# EXHIBIT 7

# RAPHAEL LLC

Neil D. Raphael
617.542-7999
nraphael@
raphaelllc.com

RAPHAEL LLC
Counselors at Law
1 Liberty Place
Boston, MA 02109
T: 617.423-3643
F: 617.307-4486

November 1, 2010

**VIA CERTIFIED U.S. MAIL**

Debra M. Brown, Esq.
P.O. Box 5265
Beverly, MA 01915
T:  (978) 921-6688

Re:     **Demand for Relief under Mass. Gen. Laws Ch. 93A**

Dear Ms. Brown:

As you are aware, this firm represents Federal National Mortgage Association ("Fannie Mae").  I am responding to your M.G.L. c. 93A demand letter ("Letter") dated October 3, 2010.

This is your second demand letter to Fannie Mae.  Once again, the Letter fails to describe in any details the deceptive and fraudulent practices purportedly committed by Fannie Mae in connection with your case.  According to your own letter and your own Complaint, the allegedly unfair and deceptive acts were committed by BAC Home Loans Servicing, L.P., not Fannie Mae.

Furthermore, you filed your complaint alleging violations of Mass. Gen. L. 93A, § 9 on May 27, 2010.  The two demand letters that you served in this matter were dated August 13, 2010 and October 3, 2010.  The 93A Demand Letter is a jurisdictional prerequisite to suit and needs to be served prior to commencing suit.

Once again, the letter fails to comply with Mass. Gen. L. ch. 93A, § 9(3), which requires a demand letter to describe "the unfair or deceptive act or practice relied upon."

Please let me know if you have any questions or concerns.

Very Truly Yours,

Neil D. Raphael

# EXHIBIT 8

**COMMONWEALTH OF MASSACHUSETTS**
**LAND COURT**
**DEPARTMENT OF THE TRIAL COURT**

09 MAY 22 PH 2:16

**MORTGAGEE'S AFFIDAVIT**
Under Chapter 206 of the Acts of 2007
(as amended by Chapter 244 of the Acts of 2007)

09 MISC 401597

Ca:

BAC Home Loans Servicing, L.P.

**Defendant(s)/Mortgagor(s):  Robert T. Brown and Debra M. Bauhaus**

**Property Address:    99 Homestead Circle**
**South Hamilton, MA 01982**

1)  The undersigned makes oath and says that it is (check one):

    ( ) The Mortgagee of the Mortgage which is the subject of this proceeding; or
    (X) One who holds under the Mortgagee; or
    ( ) One who is authorized to act by and on behalf of either the Mortgagee or
        one holding under the Mortgagee;

**AND**

2)  The undersigned further makes oath and says that (check one):

    (X)  The undersigned or a prior holder of the Mortgage has caused to be mailed the
Notice(s) to Defendant(s)/Mortgagor(s) in compliance with Section 11 of Chapter 206 of
the Acts of 2007, as amended;

**OR**

    ( )  Notice has not been sent because no notice is required under Section 11(e) of
Chapter 206 of the Acts of 2007.

    Signed under the pains and penalties of perjury this _____ day of MAR 1 4 2009
2009.

Plaintiff(s)
By:     BAC Home Loans Servicing, L.P.

Name:  _Kathy Repka_

Title:  _Kathy Repka, Asst. Secretary_

**COMMONWEALTH OF MASSACHUSETTS**
**LAND COURT**
**DEPARTMENT OF THE TRIAL COURT**

Land Court Use Only

LET JUDGMENT ISSUE: _Dec 8, 2009_

_Karyn F Scheier_

**Chief Justice**

Suffolk _____ ss.

## COMPLAINT TO FORECLOSE MORTGAGE

09 MISC ___ No. 401597

BAC Home Loans Servicing, L.P.

09 May 22   LAND COURT FILED   PM 2:16

**PLAINTIFF:**
**Name**

BAC Home Loans Servicing, L.P.

**City or Town of Residence**
Plano, TX

**DEFENDANT:**
**Name**

Debra M. Brown

**City or Town of Residence**
South Hamilton, MA

**Interest**

Owner

1.   **Your Plaintiff is the assignee and holder of a mortgage with the statutory power of sale given by**
Robert T. Brown, Jr. and Debra M. Bauhaus, a/k/a Debra M. Brown

**to** Mortgage Electronic Registration Systems, Inc.
**recorded at the** Essex County (Southern District) Registry of Deeds at Book 24316, Page 21     **dated** May 16, 2005

**covering\*** 99 Homestead Circle, South Hamilton,

**(street and number)**
**(and city and town)**
**(Unit No. and Condo.**
**Name if a Condominium)**

**and more particularly described in said mortgage.**

---

**LAND COURT USE ONLY**

### JUDGMENT

Under the provisions of the Servicemembers Civil Relief Act, as amended, this cause came on to be heard and thereupon, upon consideration thereof, it appearing to the court that the record owner is not entitled to the benefits of said Act, it is

**ORDERED** and **ADJUDGED** that the plaintiff be authorized and empowered to make an entry and to sell the property covered by the mortgage as set forth in this complaint in accordance with the powers contained in said mortgage.

**By the Court.**
**Attest:**

_Deborah J. Patterson_

**DEBORAH J. PATTERSON**
**RECORDER**

**(SEAL)**

NOTE:   Wherever the singular is used herein, it shall be deemed to mean and include the plural where applicable.
\* A metes and bounds description of the property is not necessary.

200904-0325/FCL/GRN

2.  No defendant is in the military service within the meaning of the Servicemembers Civil Relief Act.

3.   The plaintiff alleges on information and belief that the defendant is the only person interested in the equity of redemption of the property covered by the mortgage described in paragraph 1 of this petition so far as appeared of record in the said Registry of Deeds or as known to your plaintiff.

4.   The plaintiff seeks to foreclose said mortgage described in said paragraph 1 to protect its interest as secured thereby for breach of the conditions thereof and desires to comply with the provisions of the Servicemembers Civil Relief Act.

Wherefore your plaintiff prays:

1.  For an order of notice ordering the defendants to appear and answer to this complaint.

2.  For a Judgment authorizing the plaintiff to make entry for the purpose of foreclosing and an order authorizing the plaintiff to foreclose the mortgage described in paragraph 1 of this complaint by a sale under the power of sale therein contained.

3.  For such further relief as to the Court may deem meet and equitable.

ATTORNEY FOR PLAINTIFF
JaredMardeuse, Esquire
BBO# 661370


From the office of:

HARMON LAW OFFICES, P.C.
150 California Street
Newton, MA 02458

Telephone No. 617-558-0500

Office          File          No.          (If          Available)          200904-0325/FCL/GRN

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

**Countrywide**
HOME LOANS

P.O. Box 660694
Dallas, TX 75266-0694

Send Correspondence to:
P.O. Box 5170,MS SV314B
Simi Valley, CA 93085

Send Payments to:
P.O. Box 660694
Dallas, TX 75266-0694

Business Address:
450 American Street
Simi Valley, CA 93085-6295

LAND COURT
FILED
09 MAY 22 PM 2: 16

Robert T Brown,Jr & Debra M Bauhaus

08/18/2008

RE: Premises:

Account No.:

### NOTICE OF INTENTION TO FORECLOSE

Dear Robert T Brown,Jr & Debra M Bauhaus:

Countrywide Home Loans Servicing LP (hereinafter "Countrywide") services the loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this notice is as follows:

Monthly Charges:

Other Charges:

**TOTAL DUE:**

You have the right to cure the default. To cure the default, on or before November 16, 2008, Countrywide must receive the amount of ▓▓▓▓ plus any additional regular monthly payment or payments and late charges which become due on or before November 16, 2008.

The default will not be considered cured unless Countrywide receives "good funds" in the amount of ▓▓▓▓ on or before November 16, 2008. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. Countrywide reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before November 16, 2008, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law, and all occupants will be required to vacate the property.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, Countrywide and the Noteholder shall be entitled to collect all fees and costs incurred by Countrywide and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Your loan is in default. Pursuant to your loan documents, Countrywide may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.**

If you are unable to cure the default on or before November 16, 2008, Countrywide wants you to be aware of various options that

Please write your account number on all checks and correspondence.
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

Account Number:

Robert T Brown,Jr & Debra M Bauhaus

- Make your check payable to Countrywide Home Loans
- Write your account number on your check or money order
- Write in any additional amounts you are including (if total is more than $5000, please send certified check)
- Don't attach your check to the payment coupon
- Don't include correspondence
- Don't send cash

Balance Due for charges listed above

Please update e-mail information on the reverse side of this coupon

Additional
Principal

Additional
Escrow

BLGHUAA

**Countrywide**

Other

Check
Total

...able to you through Countrywide to prevent a foreclosure sale of your property. For example:

- **Repayment Plan:** It is possible that you may be eligible for some form of payment assistance through Countrywide. Our basic plan requires that Countrywide receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- **Loan Modification:** Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- **Sale of Your Property:** Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Countrywide even if your home is worth less than what is owed on it.

- **Deed-in-Lieu:** Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Countrywide, you must contact us immediately. If you request assistance, Countrywide will need to evaluate whether that assistance will be extended to you. In the meantime, Countrywide will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by November 16, 2008 as outlined above will result in the acceleration of your debt.

Also, applicable law requires the disclosure of the following information:

- The mortgage broker(s) associated with this loan are/were [we were unable to ascertain this information].

- The mortgage loan originator(s) associated with this loan are/were [we were unable to ascertain this information].

- You may be eligible for assistance from the Massachusetts Housing Finance Agency by calling 1-888-995-HOPE (www.masshousing.com), and the Massachusetts Division of Banks at ████████████, or at 1-800-495-2265.

- You are hereby notified that a NEGATIVE CREDIT REPORT reflecting on the Borrower's credit record may be submitted to a credit reporting agency if the Borrower fails to fulfill the terms of the obligations under the loan.

- If you did not sign the note but hold a legal or beneficial interest in the encumbered property, this notice is provided to you as a courtesy to warn you that if the full amount due on the loan is not paid as set forth above, you may lose your interest in the encumbered property.

Time is of the essence. If you have any questions concerning this notice, or if you disagree with our calculation of the amount required to cure the default, please contact Loan Counseling Center immediately at 1-800-641-5302. Our office hours are between 8:00 A.M. and 5:00 P.M. Pacific Time.

Sincerely,

Loan Counseling Center

E-mail use: Providing your e-mail address below will allow us to send you information on your account
Account Number ████████
Robert T Brown Jr & Debra M Bauhaus E-mail address

**How we post your payments:** All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments rather than principal reduction.

**Postdated checks:** Countrywide's policy is to not accept postdated checks unless specifically agreed to by a loan counselor or technician.



PD-8

2009060200435 Bk:28650 Pg:487
06/02/2009 01:34 ASGT Pg 1/1

## ASSIGNMENT OF MORTGAGE

Mortgage Electronic Registration Systems, Inc., P.O. Box 2026, Flint, MI 48501-2026, holder of a mortgage

from Robert T. Brown Jr. and Debra M. Bauhaus a/k/a Debra M. Brown
to Mortgage Electronic Registrations Systems, Inc.
dated May 16, 2005, recorded with the Essex County (Southern District) Registry of Deeds at Book 24316, Page 21
assigns said mortgage to BAC Home Loans Servciing, LP, 7105 Corporate Drive, Plano, TX 75024, without recourse

IN WITNESS WHEREOF, the said Mortgage Electronic Registration Systems, Inc. has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by Francis J. Nolan, Assistant Secretary and Vice President*
this 21ˢᵗ day of May, 2009

Mortgage Electronic Registration Systems, Inc.

By: _____
Francis J. Nolan, Assistant Secretary and Vice President*

*For signing authority please see Corporate Resolution recorded with the Essex County (Southern District) Registry of Deeds at Book 24067, Page 249

The Commonwealth of Massachusetts

Middlesex, ss                                                     May 21 , 2009

On this 21ᴬ day of May 2009, before me, the undersigned notary public, personally appeared Francis J. Nolan _____, proved to me through satisfactory evidence of identification, which were personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Capacity: (as Assistant Secretary and Vice President*

for Mortgage Electronic Registration Systems, Inc. _____ )

_____ (Affix Seal)
Notary Signature
My commission expires: 8/15/14

CARL A. LARSEN SANTOS
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 08/15/2014

200904-0325

BOX 28

Property Address: 99 Homestead Circle, South Hamilton, MA 01982

200904-0325

FCI

/Assignment - MA/Brown, Robert